THE WORLD MUTUAL LIFE INS. CO. OF NEW YORK

*v.*

CAROLINE SCHULTZ, Guardian, etc.

1. LIFE INSURANCE—*application.* Where the application for a policy of life insurance contains a warranty that the applicant is not subject to dyspepsia, evidence that six months or a year and a half previously, while afflicted with an abscess, the applicant suffered from some degree of dyspepsia, is not sufficient to show a breach of the warranty and defeat a recovery upon the policy.

2. SAME — *construction of questions in application.* A question contained in an application for a policy of life insurance, whether the applicant had employed or consulted, individually, a physician, will be construed to refer to an employment or consultation with reference to the application for life insurance, and not to the consultation of a physician at any time during the life of the applicant.

3. Proof that an applicant for life insurance had, six months or a year and a half previous to making his application, employed a physician, will not be sufficient to avoid a policy issued on the application, although, in answer to a question in the application, the applicant may have stated that he had not consulted a physician.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

Messrs. Williams & Thompson, for the appellants.

Messrs. McClellan & Hodges, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action brought by Caroline Schultz, guardian of Frederick Schultz, against The World Mutual Life Insurance Company, of New York, to recover the amount of a policy of insurance upon the life of Christian Schultz, for the benefit of his son Frederick, issued on the 16th day of December, 1872. The plaintiff recovered in the court below, and the defendant appealed.

The point is made by appellant, that the policy was vitiated by reason of false representations made by the said Christian Schultz.

It is virtually conceded by the appellee, that the statements and declarations made by Christian Schultz, contained in his written application for the insurance, being made by the express terms of the policy a part of it, are in the nature of warranties of the facts stated; but it is denied that the evidence establishes any falsity in the statements.

The warranties claimed by appellant as having been broken, arise out of the 14th, 18th and 26th interrogatories in the application, and the answers of the insured thereto, which are as follows:

"13. Is the party subject to dyspepsia, dysentery, or diarrhœa?"

Ans. "None."

"18. Is the party now afflicted with any disease or disorder of any kind, and if so, what?"

Ans. "None."

"26. Has the party employed or consulted, individually, any physician? Please answer this, yes or no. When yes, give name or names and residence."

Ans. "None."

Christian Schultz died on the 25th day of January, 1873. The only testimony of any witness having any personal knowledge on the subject, tending in disproof of the truth of any of the statements and declarations, was that of Doctor Degaller, the substance whereof was, that he attended the insured in his last sickness, and that the cause of his death was severe intermittent fever; that he had known the insured for two years; that his constitution was not a very healthy one according to the witness' opinion; that there was nothing particular the matter; that he didn't look well and blooming, but looked rather thin, as many men will who have to work hard and use more or less poor food; that sometime, from six months to a year and a half before his death, he had a large abscess under his arm, at which time he was confined to his bed for about a week, and witness visited him four or five times; there was a good deal of discharge from the abscess; that such abscesses he could not say indicated anything with regard to the general constitution; that they may befall the healthiest constitution; may arise from taking cold. The witness says, too, " that at that time the insured was suffering, like many people, from some degree of dyspepsia." Two other physicians gave it as their opinion, from the symptoms detailed by Doctor Degaller, in his testimony, that the insured did not die of intermittent fever, but from pyæmia, blood poison, caused by the absorption of purulent matter in his blood.

It is said by appellant, that here is proof that the insured *had* been subject to dyspepsia, to a greater or less degree, and that he *had* employed and consulted a physician individually, and so the answers were untrue. But the question was not whether he *had* been subject to dyspepsia, but *is* he subject to dyspepsia. Most certainly the jury were justified in finding that there was no breach of warranty in this respect, arising from testimony that six months or a year and a half previously, while afflicted with an abscess, the insured was suffering, " like many people," from some degree of dyspepsia.

But the insured had employed a physician. The form of the question in this respect was not, has the party *ever* em-

ployed or consulted a physician, or did he *ever* do so; but, has the party employed or consulted a physician? By the particular form of the question, the mind is naturally directed to a time recent, and well might be to the subject matter in connection with which the question is asked, namely, the application for a life insurance, and fitness as a subject of insurance, and the question, not unnaturally, might be understood as an inquiry whether the party had employed or consulted a physician with reference to having his life insured.

The auxiliary, "have," as here used, serves to denote a tense, grammatically, which expresses an action past, and often that which is just past and completed.

To allow the interrogatory, as put, to have reference to any accomplished event wholly disconnected with the application, and which may have taken place in any previous period of time then fully completed, would be to say that it covered the whole period of the applicant's life. To give any such effect to the interrogatory, would be to make it extremely misleading to the applicant.

We are of opinion the question was not sufficiently definite and specific as regards time, to warrant the finding of a breach of warranty upon this point, from the fact of the insured having employed a physician six months or a year and a half before, in the way as testified.

The testimony of the two physicians, as to their opinion that the insured died of pyæmia, was from no personal knowledge, but was based entirely upon what was testified to by Dr. Degaller; and although their testimony might tend to show that to be the cause of death, there is nothing in the evidence from which to infer that, contrary to the answer to the 18th interrogatory, the insured was afflicted with such disease or disorder, at the time of making the application. The evidence would seem to be in the contrary direction, from the statement of one of the physicians: "After the blood becomes poisoned, I should think it ought to show itself in about two or three days." There was other testimony of witnesses who had been acquainted with deceased for two years previously, that his

health was good; that he was always well and worked hard, and never missed a day.

We deem it unnecessary, under the testimony in the case, to consider the alleged error in the instructions given for the appellant, which required, that in order to avoid the policy on account of the untruth of any statement or declaration, it must have been untrue "to the knowledge of said Schültz." Admitting such instructions to have been abstractly wrong, there was so little of evidence tending to show any breach of warranty, that the instructions may well be regarded as harmless, in view of the evidence.

The judgment will be affirmed.

*Judgment affirmed.*