## THE U. B. MUTUAL AID SOC. v. O'HARA.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 10, 1888—Decided April 30, 1888.

1. When a defence is admissible against a recovery on a life policy upon the ground that the assured was a man of intemperate habits, it is competent to ask a witness whether he had ever seen him under the influence of liquor, and whether he saw him drink more than one drink, as steps towards evidence to establish a habit of intemperance.

2. It is also competent, after evidence that the assured was in the habit of getting under the influence of liquor for days after each pay day, to show that on such occasions " he came home and behaved uproariously, just as an uproarious drunken man does and abused his family," as evidence tending to show intemperate habits.

3. It is not error to refuse proof by an inexpert witness that the assured was afflicted with a special disease, but it is error to refuse proof by the same witness that he observed in the assured a condition which was in fact a symptom of the disease.

4. An interrogatory, " Have you had any medical attendance within the last year prior to this date ? If so, for what disease ? Give name and address of the doctor in full," was answered in the negative: *Held*, that it was error to refuse a point that if the jury found the assured had had any medical attendance within the year, the plaintiff could not recover.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

Nos. 9 and 10 July Term 1887, Sup. Ct.; court below, Nos. 187 and 188 May Term 1882, C. P.

On April 23, 1881, Bernard O'Hara, of Plymouth, obtained two policies of life insurance, or certificates of membership, in The United Brethren Mutual Aid Society, of Lebanon, Pa., each in the sum of one thousand dollars, one for the benefit of his wife, Mary T. O'Hara, and the other for that of his son, John F. O'Hara. He died the same year, December 14th, and the proper proofs were sent to the company. Payment being refused, separate suits were brought, in debt, by Mary T. O'Hara and John F. O'Hara, on March 28, 1882.

At the trial of the two causes together, on March 10, 1887, it was made to appear that in the policies or certificates of membership it was stipulated that if any answers or representations made by the assured in his applications should be found in any respect untrue, the certificates should be null and void. Evidence was introduced as a defence to the actions, from which it was claimed by the defendant that the answers by the assured to certain interrogatories in the application, to the effect that his habits of life were temperate, that he had never been afflicted with asthma, or dropsy, or any other disease, that he had not had any medical attendance during the year prior to his applications and had no family physician, were untrue.

Conrad Lee, called for defendant, had lived at Plymouth for eleven years, knew Bernard O'Hara, and was outside superintendent at the mines where O'Hara worked:

Q. Whether he was in the habit of coming home sober or drunk? A. Well, as a general thing he came home more times sober than he did drunk. Q. How would he behave himself when he got home? Objected to. Q. How often would he come home drunk on an average in the course of a month? A. I could not say exactly whether he was drunk or not; he would come in and have a good deal to say, more talk sometimes than he did at others; I judged at that time he had been drinking a little, taking a drink or two. Q. How often in the course of a month would he come home under the influence of liquor? A. I have noticed this perhaps three or

four days after pay; that is perhaps the way it ran. . . . . . .

Q. How would he conduct himself at these times at his own home? Objected to as not material.

By defendant's counsel: I propose to show that he came home and behaved uproariously, just as an uproarious drunken man does, and abused his family. Objected to as not material.

By the court: I do not think the manner of his treating his family is direct evidence on the matter of intemperate habits. I hardly think this is fair evidence on this question. Objection sustained.[3]

Thomas J. Phillips, called for defendant, was the inside foreman at the Avondale mines where O'Hara was employed:

Q. You knew Bernard O'Hara? A. Yes, sir. Q. Tell us as to whether or not he was afflicted with asthma. Objected, that witness has not been shown competent to pass upon that question.

By the court: I suppose in a case where the question is about a certain disease and not about the general health, it would be incompetent for a man who is not an expert on the subject to define the disease. If you want to prove general poor health or anything of that kind, I suppose you can do it by this witness.

By defendant's counsel: I simply ask this man whether O'Hara was afflicted with shortness of breath, whether he observed that in his daily life? Plaintiffs object that the witness must state the facts and not give his conclusions from the facts.

By the court: I think you may ask him whether he was sick, and how he was affected; but you may not ask him if he had any specific disease.

Plaintiffs' counsel make the further objection that the question is leading.

By the court: It certainly is leading and will have to be overruled on that ground. We overrule it on that ground and on the other also.[5]

The same witness was asked on behalf of the defendant:

Q. Did you ever see Mr. O'Hara under the influence of liquor? Objected to.

By the court: The habit of life means something more than one drink.

Q. Whether you saw him drink more than once? Plaintiffs' counsel object that the question should be put in the language of the application.

By the court: Objection sustained, question excluded.[10]

The court, WOODWARD, J., charged the jury and answered the defendant's points as follows:

We have said to you that a policy of life insurance is, in the eye of the law, a contract. We may say further, and more specifically, that a contract of life insurance is an agreement to pay a certain sum of money on the death of a person, in consideration of the due payment of an annuity as provided in the policy, during his life. In all contracts of insurance, certain statements are made, stipulations entered into, certain provisos, conditions and by-laws introduced or referred to, and when made part of the policy, they become what is called and are so denominated in the law of insurance, warranties. By a warranty, the insured stipulates for the absolute truth of the statement or statements made, upon penalty of forfeiture of his own right and that of those coming after him, to recover in case of loss, should the statements prove untrue; in other words, the truth is a condition precedent to the right to recover the amount of a life insurance policy.

What is called the application for a life insurance policy, is generally made a part of the policy, and enters into the contract, and therefore must be referred to. In the present case an application for insurance, or as it is called in this particular instance, for membership, in the U. B. Mutual Aid Society of Pennsylvania, was regularly made by Bernard O'Hara. In that application there are certain questions to which are appended his answers. The law applicable to such a case is this:

If the applicant makes a false answer as to having had any one of several diseases specially mentioned, although he does so innocently and from ignorance, he forfeits his right to recover the insurance which has been granted to him upon the faith of such answers, which become warranties, and the falsity of which vitiates the contract contained in the policy. Question 11 in the application in the present case is this: "Have you ever been afflicted with or had any symptoms of the following diseases;" mentioning a number of diseases to which

it is not necessary to call your attention, but including the two that have become important in the present controversy, namely, dropsy and asthma; and to that question the applicant answered as appears from the application, "No." No. 12 of the questions is this: "Have you ever been afflicted with any other disease or complaint not above mentioned? If you have, state the nature and character of the disease or complaint." To this also the answer is "No." The law applicable to question 12 is this: If there is no wilful misrepresentation in regard to other diseases, the policy is not vitiated, necessarily. There is a distinction in the law between the answer made to a question referring specifically to certain diseases, and to the case of a question referring in general terms to other diseases. In the first case, an inaccurate or false answer is fatal to the policy, although innocently made and in ignorance of the truth. In the second case, there must be shown, in order to vitiate the policy, a wilful misrepresentation. That, as we understand it, is the law in regard to that distinction.

[Question 13 is this: "Are your habits of life temperate? If so, have they always been so?" And the reply is "Yes." Considerable evidence has been introduced on the part of the defendant, and also in rebuttal on the part of the plaintiffs, relative to this question. It is our duty to charge you upon this subject, to define the meaning of this question. The question is not, "Do you drink liquor?" Or, "Are you a total abstainer from the use of intoxicating drink?" But is it the custom and habit of your life to refrain from intemperance and intoxication? It is doubtful whether there would be much life insurance business carried on successfully, on any contract more stringent than the one which we interpret this to be. A man who works in the mines day after day, promptly and regularly, who supports his family comfortably, and lives an orderly and respectable life in all regards, is not to be pronounced an intemperate man or a man of intemperate habits, upon evidence that he occasionally has indulged in the use of intoxicating drink.] [4]

[We call your attention next to interrogatory 8 in this application: "Have you had any medical attendance within the last year prior to this date? If so, for what disease? Give name and address of the doctor in full." In regard to

this question we say to you that while there is no fixed absolute rule or canon of construction in the matter, it is to have a rational, reasonable interpretation. You observe that the question is a duplex one. "Have you had any medical attendance within the last year, prior to this date? If so, for what disease?" This clearly imports that the attendance of a medical man referred to must have reference to some disease, which means some serious illness of any description you choose; something requiring attention from a medical man, a disease. To illustrate what I mean I will refer to a case in which the question was as to whether a party applying for insurance had ever had a hemorrhage, and he answered "No." The defence was made to the policy, that he had had nose bleed, which in a strict interpretation is a hemorrhage. But the court said that such an interpretation of that clause in the contract would be absurd and ridiculous, and refused to entertain it as a defence.]¹ . . . . .

We now call your attention to certain points in writing submitted by defendant's counsel, as follows:

1. The defendant respectfully prays the court to charge the jury that the plaintiffs have not shown such a case in pleading and evidence as is necessary to recover in this action.

2. That according to the evidence as to the contents of the certificate of membership, it contained certain express conditions precedent to a right to recover, and it was therefore the duty of the plaintiffs to affirmatively prove the performance of such conditions, and having failed so to do, they cannot recover.

Answer: We decline to affirm those points, and say to you that under our rule of court, the evidence is sufficient. We have examined the authorities quoted by the defendant, but are still of that opinion.

3. That the statements in the applications of Bernard O'Hara and his answers to the questions therein contained, being made warranties, and the express basis of the contract upon which the present actions are brought, the plaintiffs cannot recover if the answers to the said questions were in any material particular untrue.

Answer: That point we affirm.

4. Therefore, if the jury find that Bernard O'Hara at the

time of making the application for membership of this company was afflicted with asthma, then the plaintiffs cannot recover.

Answer: That point we affirm.

5. If the jury find that he was or had been afflicted with dropsy a short time before making said application, the plaintiffs cannot recover.

Answer: That point we affirm.

6. If the jury find that Bernard O'Hara had had any medical attendance within the year prior to his making said application, then the plaintiffs cannot recover.

Answer: Qualified as it is by our general charge on that subject, we affirm the point.[6]

7. If the jury find that Bernard O'Hara at the time of making said application was not a man of temperate habits then the plaintiffs cannot recover.

Answer: That point we affirm.

8. If the jury believe the evidence of Dr. N. G. Whitney, corroborated as it is by the evidence of the admissions of Bernard O'Hara himself, and the other circumstances in the case, then the plaintiffs cannot recover, and the verdict must be for the defendant.

Answer: In regard to this point we say to you: If they so believe notwithstanding the contradictory evidence offered by the plaintiffs on the same subject.

With these remarks, gentlemen, we leave this case in your hands.

The verdicts of the jury were in favor of the plaintiffs, and judgments being entered thereon, the defendant took these writs assigning as error, inter alia:

1. The part of the charge embraced in [ ][1]
3. The refusal of the defendant's offer.[3]
4. The part of the charge embraced in [ ][4]
5. The refusal of the defendant's offer.[5]
6. The answer to the defendant's sixth point.[6]
10. The refusal of the defendant's offer.[10]

*Mr. A. Ricketts* (with him *Mr. S. P. Light*), for the plaintiff in error:

1. The statements and representations of the applicant in his

application, were warranties, were part of the contract, and if untrue avoided the policy. Even though the agent or medical examiner knew the true state of facts, that would not alter or affect the contract. The certificate of membership embodies the contract and must speak for itself : Hartman v. Insurance Co., 21 Pa. 466 ; U. B. Mutual Aid Soc. v. White, 100 Pa. 12 ; Foot v. Insurance Co., 61 N. Y. 571 ; 1 Phillips, Insurance, § 542.

2. We submit that an examination of the whole charge will show that as a whole it was calculated to mislead the jury. The question " Have you had any medical attendance within the last year prior to this date ? " was a very direct and simple one and there was nothing " duplex " about it.

3. The testimony was that O'Hara would come home under the influence of liquor at least every month, during the week after pay day. We proposed to show that he would get uproariously drunk and abuse his family, yet it was ruled that the offer was no evidence that his habits of life were intemperate. So the instructions complained of in the fourth specification were erroneous in that they tended to withdraw the attention of the jury from the conflict of testimony which it was for them to dispose of : Bovard v. Christy, 14 Pa. 267 ; and directed the attention of the jury to a point on which there was no evidence : Snyder v. Wilt, 15 Pa. 59. Where the language of the charge tends to mislead the jury, it is error and ground for reversal : Stall v. Meek, 70 Pa. 181 ; Fawcett v. Fawcett, 95 Pa. 376 , and where the charge as a whole tends to mislead the jury, it is error : Penn. R. Co. v. Berry, 68 Pa. 272 ; Bisbing v. Third N. Bank, 93 Pa. 79 ; Connelly v. Walker, 45 Pa. 449.

*Mr. John T. Lenahan* (with him *Mr. John Lynch*), for the defendants in error :

1. Although the assured is held to the exact truth of his warranty, given as a condition of his recovery, yet if the words of the warranty, taken literally, are inconsistent with the main purpose of the instrument, they may be interpreted, if reasonably susceptible thereof, so as to carry out the intent of the parties and the object in view: Home Mut. Life Ass. v. Gillespie, 110 Pa. 84.

2. The charge, as a whole, was such a fair presentation of

all the questions at issue, that the jury could not have been misled. This being so there was no error: Lehigh V. R. Co. v. Brandtmaier, 113 Pa. 610. Mere omissions to say what might have been properly said are no grounds of complaint by a party who submitted no propositions and suggested no views of the testimony for the consideration of the court: Reeves v. Railroad Co., 30 Pa. 460; Insurance Co. v. Foley, 105 U. S. 1055.

3. The instructions of the court as to what constitutes a man of intemperate habits are amply vindicated by authority : May, Insurance, § 299; Swick v. Insurance Co., 2 Dill. 160; Fox v. Insurance Co., 4 Big. 458.

OPINION, MR. JUSTICE PAXSON :

These cases were tried together in the court below, were argued together here, and may be disposed of in one opinion. The questions are alike in each.

The actions were debt on policies of insurance. The defence was that the assured had made false answers to certain interrogatories contained in the application. In the policy or certificate of membership, it was expressly stipulated that if any answers or representations made by O'Hara, the assured, in his application, should be found in any respect untrue, then the certificate should be null and void. It was alleged by the defendant company that in his application O'Hara stated that his habits of life were temperate, and that he had never been afflicted with asthma, or dropsy, or any other disease, and that he had not had any medical attendance during the year prior to his application, and that he had no family physician. The company alleged that these representations were untrue, and took upon itself the burden of establishing their untruth.

In the third and tenth assignments complaint is made that the court below excluded certain evidence offered to prove that the assured was a man of intemperate habits. Referring to the tenth assignment, the witness upon the stand was asked the question : Did you ever see Mr. O'Hara under the influence of liquor? This was objected to, and was ruled out by the court for the reason that " the habit of life means something more than one drink." The remark of the learned judge was entirely accurate, but it was not a sufficient reason

for excluding the evidence. It was a link in the chain which might or might not have been followed up by sufficient other evidence to establish a habit of intemperance. The defendant was entitled to make a beginning in its proofs, and when its evidence was all in it would be for the jury, under proper instructions from the court, to say whether it was sufficient to establish a habit. The further question was then asked of the witness whether he ever saw O'Hara drink more than once. This was objected to by plaintiffs' counsel for the reason that the question should be put in the language of the application, and the objection was sustained by the court. If the witness had stated, in the language of the application, that O'Hara was a man of intemperate habits, it would have been at best a mere opinion of no possible value unless the jury had the facts before them of which it was predicated. Men may differ widely as to what constitutes intemperate habits. Some persons of extreme views may regard the slightest indulgence as intemperance; others, perhaps, would regard a man as sober as long as he can walk. The provision in the policy has no reference to extreme views on either side. It seeks to ascertain whether the habits of the assured are so far intemperate as to increase the risk. Hence if it be shown as was attempted (see third assignment) that the assured was in the habit of getting intoxicated for three or four days after each pay day; that upon such occasions "he came home and behaved uproariously, just as an uproarious drunken man does, and abused his family," it is certainly a link in the chain of evidence tending to show habits of intemperance. When it is alleged that a man is drunk his behavior becomes material, even to the abuse of his family, as it is his conduct from which the jury must, to a considerable extent, draw their conclusions in regard to his condition. We think it was error to exclude the evidence referred to in these assignments.

Another branch of the defence was that the assured was afflicted with asthma. It was not error to refuse to allow the company to prove this by an inexpert witness. (See fifth assignment.) But when the same witness was asked whether O'Hara was afflicted with shortness of breath, the question should have been allowed. It referred to a matter of fact. The witness had worked with O'Hara; he could tell whether

he had ever observed his shortness of breath without any medical knowledge. The question did not refer to the assured's disease (asthma), but to one of its symptoms which is visible to the inexpert eye.

We regard the answer to the defendant's sixth point as misleading. The point was : " If the jury find that Bernard O'Hara had had any medical attendance within the year prior to his making said application, then the plaintiff cannot recover." The learned judge affirmed this point as qualified in his general charge. An examination of the general charge does not furnish an adequate answer to the point. The eighth interrogatory in the application is : " Have you had any medical attendance within the last year prior to this date ? If so, for what disease ? Give name and address of the doctor in full." The object of this interrogatory is manifest. If the assured had no medical attendance within the time prescribed, and so answers, that is the end of it. But if he had such attendance, then the company is entitled to know for what cause he had medical advice or aid, and the name and address of the doctor, in order that they may ascertain the particulars from him. And if the assured falsely answer that he had no medical attendance, he is not entitled to recover. It follows that the point in question should have been affirmed.

The remaining assignments we do not regard as important.

Judgment reversed, and a venire facias de novo awarded.