### FIDELITY MUTUAL LIFE ASSOCIATION *v.* McDANIEL.

[No. 2,852.    Filed May 29, 1900.    Rehearing denied Nov. 27, 1900.]

PLEADING.—*Exhibit.*—*Appeal and Error.*—The want of an exhibit, when the pleading is not demurred to, is a defect which is regarded as cured by verdict.    *pp. 611, 612.*

INSURANCE. — *Application.* — *Concealment of Facts.* — *Pleading.* — Where in an action on an insurance policy defendant answered that insured, in his application, concealed the fact that he had been treated

and prescribed for by a physician for *la grippe*, which answers, by the terms of the application, were made material to the risk, a reply setting out the statute of the State in which the company was incorporated requiring good faith only on the part of an applicant unless such misrepresentation relates to some matter material to the risk, and alleging that the diseases for which the insured had been treated, which had not been disclosed in the application, were not serious and left no bad effect in his constitution, was not sufficient to avoid the answer.  *pp. 612-625.*

TRIAL.—*Practice.—Appeal and Error.*—The time during the trial when a request for answers to interrogatories shall be made is largely within the discretion of the trial court, and the action of the court in refusing to permit the defendant to amend interrogatories after return of a general verdict, and before answers to interrogatories were returned, will not be disturbed on appeal, where no abuse of discretion is shown.  *pp. 625, 626.*

From the Marion Circuit Court.    *Reversed.*

*S. N. Chambers, S. O. Pickens* and *C. W. Moores,* for appellant.

*F. M. Finch, J. A. Finch* and *G. A. Deitch,* for appellee.

COMSTOCK, J.—Appellee sued appellant upon a policy of insurance upon the life of her husband, deceased. The complaint was in two paragraphs. The first alleged full compliance with all the conditions of the policy, and the second alleged compliance with the conditions except as to furnishing proofs of death, which, it was averred, were waived. A copy of the policy is made a part of each paragraph. To this complaint appellant filed an answer in three paragraphs: (1) General denial; (2) breach of warranty contained in the so-called certificate of health and revival contract, in this, that in said certificate of health and revival contract, the insured stated that he had not consulted or been prescribed for by any physician, or received any medical treatment since the date of the original application, when, in fact, the insured had consulted, been prescribed for, and received medical treatment for inflammatory rheumatism in 1894; (3) breach of warranty contained in the

original application, in this, that the insured concealed the fact that he had been treated and prescribed for by a physician for a disease, to wit, *la grippe*, in 1892. To the second and third paragraphs of answers, appellee filed a reply in nine paragraphs. The third, fourth, seventh, eighth, and ninth paragraphs were dismissed.

The first paragraph of reply was a general denial. The second was addressed to the third paragraph of answer, and sets forth facts showing that the answer as to diseases, etc., which appellant alleges to be false, was not false in any material respect, and alleges facts showing good faith of insured in making the statement within the statute of Pennsylvania relating to representations in applications for life insurance, which statute is set out in the reply, and is as follows: "That hereafter, whenever the application for a policy of life insurance contains a clause of warranty, of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk." The fifth is also addressed to the third paragraph of answer, and is, in effect, the same as the second. The sixth is addressed to the second paragraph of answer. It takes up each separate allegation of the second paragraph of answer and denies the same, pleads the statute of Pennsylvania set forth in the second paragraph of reply, and alleges facts showing the good faith of insured in making the statements in the health certificate and revival contract.

A demurrer was filed to the second, fifth, and sixth paragraphs of reply, and same was overruled as to each. Trial was had and verdict and judgment rendered in favor of appellee for $2,175. The jury also answered interrogatories propounded by the court.

The first specification of the assignment of errors is waived. The second, third, fourth, fifth, sixth, seventh, eighth, and ninth are based upon the ruling of the court upon the demurrer of the defendant to the several paragraphs of reply. The tenth, upon the action of the court in overruling the motion of the defendant after the cause had been submitted to the jury and it had returned its general verdict, but before it had returned the answers to interrogatories, for leave to amend the interrogatories, and to require the jury to return to its jury box and to return with their general verdict answers to the interrogatories as amended, and in directing the jury to sign the answers to interrogatories as they stood. The eleventh is the overruling of appellant's motion for a new trial.

The demurrer to the second paragraph of reply to the third paragraph of the answer was overruled. The third paragraph of answer bases the defense upon the policy and written application of the insured. Counsel for appellee make the point that inasmuch as neither the policy nor the application is made a part of this paragraph, it is bad; citing *Supreme Lodge, etc.,* v. *Edwards,* 15 Ind. App. 524, and *Landon* v. *White,* 101 Ind. 249, arguing therefrom without conceding that the third paragraph of reply is bad, that if the second paragraph of reply, which is addressed to the third paragraph of answer is bad, it is good enough for a bad answer. The policy, which is made a part of the complaint, and is the foundation of the action, reads: "In consideration of the application for this policy, which is made a part hereof, a copy of which is hereto attached." The application is indorsed upon the policy. The policy in suit is referred to in the answer, and statements in the application alleged to have been false are set out in the answer. There is much force in the claim of appellant's counsel that the application is a part of the policy. The reference to the policy in the answer obviates the necessity of making it an exhibit to the answer. But conceding, without deciding,

that the instruments named should have been exhibits to the answer, and that the replies, if bad, were good enough for the answer, the answer was not demurred to, and the plaintiff has no exception in the record under which an attack upon the answer can proceed in this court. The policy and application were introduced in evidence. The want of an exhibit, when the pleading is not demurred to, is a defect which is regarded as cured by verdict. *Cummings* v. *Girton,* 19 Ind. App. 248. The rule that a demurrer to a reply searches the record, does not apply to the record before us. This claim of appellee can not be allowed.

The third paragraph of answer avers that the insured was sick of *la grippe* for two weeks; that he was prescribed for and attended by a physician. The second paragraph of reply, after denying that he had *la grippe,* alleges that if he did have the same, the medical examiner of appellant knew the fact; that such examiner, upon examining the insured, stated to him that he was a first class risk, physically sound and a fit subject for life insurance; that the insured believed this. It then alleges the Pennsylvania statute set out at page two of this opinion regarding the effect of misstatements in the application, and avers that the alleged attack of *la grippe* was not *la grippe* but a severe cold, which yielded readily to treatment; that it did not affect the physical condition of the insured; that no bad effect of a permanent nature resulted therefrom to the insured, and that his death was not in any manner hastened nor caused thereby. From the averments of this part of the reply, it appears that the knowledge of the illness of the insured, which it is alleged appellant had at the time it accepted the application and issued the policy, was acquired by reason of the fact that the medical examiner of the company was intimately acquainted with the insured and was the partner of his family physician who had treated him for the diseases, the knowledge of which he concealed from the com-

pany. It has been held by this court in *Shaffer* v. *Milwaukee, etc., Ins. Co.,* 17 Ind. App. 204, that when knowledge is obtained by an agent wholly independent of the business or employment of his principal and in a transaction in which his principal is not connected, such knowledge is not the knowledge of his principal. It is claimed, however, by counsel for appellee, that the knowledge of the examiner above stated was pleaded merely to show the good faith of the insured in his application. The statute of Pennsylvania set out in said paragraph of answer requires good faith only on the part of an applicant, "unless such misrepresentation or written statement relates to some matter material to the risk." The only ailment alleged in this paragraph of answer is *"la grippe."* The averments of this paragraph of reply are that the representations were made in good faith; that the insured did not have *la grippe;* that he had instead a cold which yielded readily to simple remedies, and that this "was not material to the risk." The defendant corporation was a creation of the laws of Pennsylvania; its contracts are to be construed by the laws of that state which must govern its enforcement. The policy recites in witness of the contract: "The Fidelity Mutual Life Association has by its president and treasurer signed this contract at its office in Philadelphia." It promises to pay the sum insured "within ninety days after the acceptance of due and satisfactory proof at its office in the city of Philadelphia."

In *Fidelity, etc., Assn.* v. *Ficklin,* 74 Md. 172, 21 Atl. 680, 23 Atl. 197, the Maryland court of appeals held that the policy of appellant was a Pennsylvania contract and controlled by its laws, using the following language: "Everywhere, within and without the state which created it, its contracts are limited, construed, and sustained according to its charter, and the laws which affect its operation. In *McKim* v. *Glenn,* 66 Md. 484, 8 Atl. 130, this court said: 'It is a familiar principle, that a corporation, and all who deal with it, are bound by the law of its creation, and all

such laws as may be legitimately prescribed for its government by the sovereign authority from which it derives its corporate existence.' It appears to us, therefore, that the inquiry in reference to the answers in the application for insurance ought to be not only whether they were true, but also whether they were made in good faith, and whether they related to some matter material to the risk."

In *Penn Mutual Life Ins. Co.* v. *Mechanics, etc., Co.,* 19 C. C. A. 286, 72 Fed. 413, 38 L. R. A. 33, 56, it is said: "This is one of a class of statutes passed in many states to relieve against the hardships arising from the strict enforcement at common law of warranties in insurance policies concerning matters having no real or proximate relation to the risk assumed by the insurer. By the aid of such warranties, and the innocent mistakes of the insured, it often happened that the insurer was able to escape liability on a ground having no real merit, and of the purest technicality; that such statutes are remedial in their nature, and are quite within the police power of the legislature, is no longer a debatable question * * *. The statute has been construed by the supreme court of Pennsylvania, and our conclusions above stated are in accordance with the views of that court. * * * The construction of a state statute by the highest court of the state is usually authoritative în courts 'of the United States. * * * And, even if it were otherwise, we should reach the same conclusion in this case."

Counsel for appellant question the application of the Pennsylvania statute only upon the ground that it does not contain the word "warranty" which word is used in the statute. The use of the word "warranty" is not necessary to make a warranty. *Jones* v. *Quick,* 28 Ind. 125; *Long* v. *Anderson,* 62 Ind. 537. It is agreed in the application that the statements contained therein are material; they have the effect of express warranties. The failure of the insured to state in his application that he had had a severe cold and

had been treated therefor prior thereto would not be a defense, it being averred in the reply that the cold was trivial and yielded readily to treatment.

In *Billings* v. *Metropolitan Life Ins. Co.*, 70 Vt. 477, 41 Atl. 516, the insured was required in the application to give full particulars of any illness had since childhood and name the medical attendant or attendants.   In construing this question, the court said: "A mere temporary indisposition, not serious in its nature, such as indicated by the evidence on the part of the defendant, other than measles can not be considered an illness, and the mere calling into a doctor's office for some medicine to relieve such temporary indisposition, or the calling at the home of the insured by the doctor for the same purpose, can not be considered an attendance by a physician, nor a consultation with a physician, within the meaning of the question.   'Illness,' as used, means 'a disease or ailment of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which does not tend to undermine and weaken the constitution of the insured.' " See, also, *Northwestern, etc., Co.* v. *Heimann,* 93 Ind. 24; *Continental Ins. Co.* v. *Yung,* 113 Ind. 162; *Connecticut, etc., Co.* v. *Union Trust Co.,* 112 U. S. 258, 5 Sup. Ct. 119, 28 L. ed. 708; Bacon on Ben. Soc., etc., (2nd ed.) §234, and authorities there cited; *Germania Ins. Co.* v. *Rudwig,* 80 Ky. 223.

Counsel for appellant cite many cases in support of its claim, among them the five cases following, from the supreme court of Pennsylvania.   In *Mutual Aid Soc.* v. *White,* 100 Pa. St. 12, the insured in his application misstated his occupation.   The court held that the insured's occupation was material to the risk.   In *Mutual Aid Soc.* v. *O'Hara,* 120 Pa. St. 256 , 13 Atl. 932, it was pleaded that the insured had consulted physicians generally, and, not as in the case before us, that he had consulted a physician for a specified disease.

In addition to pleading the statute of Pennsylvania afore-said, appellee pleads that the diseases for which the insured had been treated, which had not been disclosed in his appli-cation, were not material and left no bad effect in his con-stitution. The application makes the answers material to the risk. The insured agreed with the company that the answers to his application should be made and were ma-terial to the risk. In *Cerys* v. *State Ins. Co., etc.,* 71 Minn. 338, 27 Ins. L. J., 258, 73 N. W. 849, it was held that where it is stipulated in the policy that the application on which it is based shall be a part of the contract and a war-ranty by the insured, and if the interest of the latter in the property be not truly stated therein, the policy shall be void, the parties having said for themselves what shall be material, and the assured can not be permitted in case of loss to escape the consequence of making a false answer. He can not be allowed to claim that an answer is immaterial which by his contract shall be considered material. The court cites *Campbell* v. *New England, etc., Ins. Co.,* 98 Mass. 381. Mr. Justice Gray in this case said: "The parties may, by the frame and contents of the papers, either by putting representations as to quality, history, or rela-tions of the subject of insurance into the form of answers to specific questions, or by the mode of referring to them in the policy, settle for themselves that they shall be deemed ma-terial; and when they have done so, the applicant for insur-ance can not afterwards be permitted to show that the fact, which of itself they thus declared material to be truly stated to the insurers, was in fact immaterial, and thereby escape from the consequences of making a false answer to such a question." It also quotes *Graham* v. *Fireman's Ins. Co.,* 87 N. Y. 69; May on Ins., §195, as follows: "While it may well be that a misrepresentation of a matter which does not affect the risk, and is not material in some cases, as is claimed, will not avoid the policy, and whether it is material is a question for the jury, such rule has, we think,

no application where by the terms of the policy misrepresentations are converted into warranties by a stipulation that an untrue answer will avoid the policy.  If it is stipulated that if there is any misrepresentation whatever, the contract should be void, it is of no importance whether it is a warranty or representation.  The materiality is contracted for and under the rule as to warranties is not a subject of construction."

Counsel for appellant argue that the deceased having agreed that the answers were material, and the answer to the complaint averring the misrepresentations thereof, that the deceased had been treated by a physician, it was not competent to evade such by the averment that although it was true that he had misrepresented the facts, yet because the disease and the treatment by the physician left no vice in his constitution that the company was not therefore relieved from its liability.  We think it may be conceded that the concealment of the fact that the insured had had a cold which yielded readily to treatment was not a misrepresentation of a material fact; but under the decisions, we are of the opinion that a statement of the insured in his application that he had not been attended or treated by a physician was a misrepresentation of a matter material to the risk.  An untrue answer to the question as to whether the insured had been accepted or rejected by another company is a material misrepresentation or concealment which will avoid whether the answer is made a part of the contract or not. Biddle on Ins., §783.  A statement by an applicant in answer to a question that he had been accepted at the ordinary rate, when in point of fact he had been declined at one office and accepted at another but nothing further done, was thought by the court to be a *suppressio veri*.  *Fowkes* v. *Manchester, etc., Ins. Co.*, 3 F. & F. 440.  Where in answer to a question as to whether he had been rejected the applicant stated that he was in process of negotiation with another office, and in fact, though he was negotiating, his

life had always been rejected, it was held concealment. *In re General, etc., Life Assurance Co.,* 18 Wkly. R. 396. Where the answer to the question "Has a proposal ever been made on your life at any other office or offices? if so, where? Was it accepted at the ordinary premium, or at an increased premium or declined?" "Insured now in two offices for 16,000 pounds at ordinary rates. Policies effected last year." And though the applicant did have two policies to that amount, one of the offices had declined to increase the amount of insurance and several others had declined him altogether, it was held that there had been a material concealment and that the office was entitled to have the contract set aside. *London Assurance* v. *Mansel,* 11 Ch. Div. 363.

Whether a misrepresentation by an applicant for insurance is material is a question of law when the facts are ascertained. *American, etc., Soc.* v. *Bronger,* 11 Ky. Law Rep. 902, 15 S. W. 1118. A false answer in a written application for life insurance to a question as to whether any other company had declined to carry a policy on the applicant's life was a material misrepresentation and avoided the policy. In *Mutual Aid Soc.* v. *White,* 100 Pa. St. 12, 16, the applicant stated in his application that he was a laborer and a widower. His answers in this respect were false. The court held that the questions are material not only in this, but by the terms of the agreement.

A false statement that the insured had not applied to any other company and been rejected voids a policy of life insurance, although the insured in making it believed it to be true, and the agent of the company knew it to be false when it was made. *Clemans* v. *Supreme Assembly,* 131 N. Y. 485, 30 N. E. 96, 16 L. R. A. 33. A policy of insurance is voided by a false statement in an application that no foreign insurance company has declined to grant a policy on the life of the insured. *Kemp* v. *Good Templars, etc., Assn.,* 64 Hun 637, 19 N. Y. Supp. 435.

Every fact is material which increases the risk, or which, if disclosed, would have been a fair reason for demanding a higher premium; nor is it of any consequence that the death was not in fact produced by a cause connected with the subject of the misrepresentation. If there was a suppression of a material fact, which, if disclosed, would have caused the insurance to be refused, it is fatal to the policy. *Hartman* v. *Keystone Ins. Co.*, 21 Pa. St. 466. Where a specific answer is asked and the applicant makes an untruthful answer, the policy is avoided, whether the answers are warranties or representations. Bacon on Benefit Societies and Life Insurance, §220. A misrepresentation by one party to a fact specifically inquired about by the other will exonerate the latter. It is particularly applicable to written inquiries referred to in the policy. *Miller* v. *Mutual, etc., Ins. Co.* 31 Iowa 216.

It is for the court to rule whether or not a matter is material, and for the jury to determine whether the statements concerning such matters material are substantially true. Bacon on Benefit Societies and Life Ins., §212; *Campbell* v. *New England, etc., Ins. Co.*, 98 Mass. 381; *Davenport* v. *New England, etc., Ins. Co.*, 6 Cush. (Mass.) 340; *Phoenix Life Ins. Co.* v. *Raddin,* 120 U. S. 183, 7 Sup. Ct. 500, 30 L. ed. 644; *Day* v. *Mutual, etc., Ins. Co.*, 1 McArthur (D. C.) 41, 29 Am. Rep. 565.

In *Carson* v. *Metropolitan Life Ins. Co.*, 1 Pa. St. 1, it was held that parties to a contract by the very written stipulations settle for themselves all question as to its materiality. The test of materiality of a misrepresentation or concealment in a contract of insurance is that it influences the insurer in determining whether to accept the risk or not. If the insured conceals from the insurer the fact that prior to the date of the policy he had been attended for a serious disease, there can be no recovery, and the fact that he did not die from the disease for which he was attended has no proper place in the consideration of the question. In this

case, the court adopted the view in the matter of materiality as contained in May on Insurance, Par. 184, namely: "The parties to a contract by the very written stipulation settle for themselves its materiality." Again, "If John W. Carson prior to the date of the policy had been attended by a physician for any serious disease or complaint and had concealed that fact from the company, there could be no recovery and the fact that he did not die from the disease for which he was attended had no proper place in the consideration of the question." To sustain the point, the court quotes the vigorous language of Black, C. J., in *Hartman* v. *Insurance Co.*, 21 Pa. St. 466.

In Joyce on Insurance, par. 2070, the authority cites and summarizes numerous cases. Some of them we give. "If specific inquiries are made whether the assured has medical attendance within a stated period of time, the fact is thereby made material, and must be disclosed." *Mutual Aid Soc.* v. *O'Hara*, 120 Pa. St. 256, 13 Atl. 932, where the inquiry was made, "How often has medical attention been required?" and the answer was "Two years ago," and the name of the medical attendant being asked, assured gave the name of Doctor R———, who had in fact attended him about a year before, but the assured did not disclose the fact that he had a relapse shortly thereafter when he was attended by Dr. C. and that three physicians in attendance had despaired of his life; such information was found immaterial by the jury, and no intended fraud existed; nevertheless, the policy was declared void. *Cazenove* v. *British, etc., Co.*, 29 L. J. C. P. 160.

In *Metropolitan Ins. Co.* v. *McTague*, 49 N. J. L. 587, 9 Atl. 766, it is held that the statement by the assured that he has not been prescribed for by a physician is falsified by the fact that a physician has prescribed for a cold. This decision is cited with approval in *Cobb* v. *Covenant, etc., Assn.*, 153 Mass. 176.

In *White* v. *Providence, etc., Soc.*, 163 Mass. 108, 39 N.

E. 771, 27 L. R. A. 398, it is held that if the application ask "By what physician were you last attended ?" the applicant is held to have been attended by a physician within the meaning of that question when it appears that he had called upon a physician and submitted to an examination by him, and had subsequently again called upon the same physician and consulted him.

In *Brown* v. *Metropolitan Ins. Co.,* 65 Mich. 306, 32 N. W. 610, it is held that where the name of the physician who had last attended was asked. that this must be construed to mean an attendance for some disease of importance and not a mere temporary indisposition.

In *World, etc., Ins. Co.* v. *Schultz,* 73 Ill. 586, it is held that if the inquiry is as to the last medical attendant the fact is so far rendered material that it must be disclosed or truly stated. The insurer may desire to consult with the medical man who was last in attendance, since the information possessed by him may have an important bearing upon the risk and influence largely the judgment of the insurer. If the name of the last medical attendant is asked, it must be given whether he be a quack or regular physician. *Everett* v. *Desborough,* 5 Bing. 503. Concluding section 2070, *supra,* Joyce says: "In all cases, however, where questions are asked as to assured's medical attendant, consultation of physician, medical treatment, and the like, the assured should answer in good faith; having in view that the obvious purpose of the inquiry, manifest from the words used, should be considered. If in the light of the evidence presented it is apparent that the assured's answer can be viewed otherwise than as evasive and incomplete, and as intended to prevent a disclosure as to past health from the physician who could best give information as to the same, or to prevent further inquiry by the assurer, then such evasive or incomplete answer ought to avoid the contract. But courts should not by construction in any case force words out of their ordinary and accepted meaning, and if

the answer given is clearly responsive to the question, according to the accepted meaning of the words used, it should be held sufficient. We believe these suggestions fully accord with the decided cases. The question whether the answers have been made in good faith is generally one for the jury."

The latest case to which our attention has been called is *March* v. *Metropolitan, etc., Ins. Co.,* 8 Ins. L. J. (N. S.) 30, 40 Atl. 1100. The case was decided by the supreme court of Pennsylvania in January, 1899. It was one involving the statute in question. After quoting the section of the statute upon which appellee in this case relies, the court say: "The meaning of this language is perfectly plain. A misrepresentation or untrue statement in an application, if made in good faith, shall not avoid the policy unless it relate to some matter material to the risk. If it does relate to such matter, the act is inapplicable. If the matter is not material to the risk, and the statement is made in good faith, although it is untrue, it shall not avoid the policy. As we said in *Hermany* v. *Association,* 151 Pa. St. 17, 24 Atl. 1064, this act has effected a change in life insurance policies, and a very wise and wholesome change it is. It provides against the effect which formerly attached to warranties as to many frivolous and unimportant matters contained in the questions and answers set forth in the applications, which often were of no consequence as to the risk involved, but which the courts were obliged to uphold simply because they were warranties. This class of merely technical objections to recovery is now swept away. Ordinarily questions of good faith and materiality are for the jury, and, where the materiality of a statement to the risk involved is itself of a doubtful character, its determination should be submitted to the jury. But it was never intended by the act of 1885, nor did that act assume, to change the law in cases where the matter stated was palpably and manifestly material to the risk, or where it was absolutely and visibly false in fact. * * * * A strong case

illustrating the materiality of this class of questions is, *Aid Soc.* v. *O'Hara,* 120 Pa. St. 256, 13 Atl. 932. In the opinion delivered by Paxson, J., it is said : 'The eighth interrogatory in the application is : Have you had any medical attendance within the last year prior to this date ? If so, for what disease ? Give name and address of the doctor in full. The object of this inquiry is manifest. If the assured had no medical attendance within the time prescribed, and so answers, that is the end of it. But, if he had such attendance, then the company is entitled to know for what cause he had medical advice or aid, and the name and address of the doctor, in order that they may ascertain the particulars from him. And, if the assured falsely answer that he had no medical attendance, he is not entitled to recover.' This case was decided in 1888, three years after the passage of the act of 1885. In *Mengel* v. *Insurance Co.,* (176 Pa. St., 280, 35 Atl. 197,) decided in 1896, one of the questions was, 'Have you always been temperate ?' and the answer was, 'Yes.' We held there could be no recovery, because the uncontrovertible proof was that the insured had been very frequently drunk, and at least six times during the preceding five years had required the services of a physician from that cause. He died in four months after the policy was issued, of delirium tremens resulting from intemperance. Another point was : 'The insured having, in his application, in answer to question 23 (How long since you have consulted any physician ? For what disease ? Give name and residence), answered, 'About one year, for light influenza ; Dr. James W. Keiser, Reading, Pa. ; and the plaintiff, having, in the proof of death, by affidavit of Dr. James W. Keiser, shown that, during the five years preceding the applicant's death, he attended said applicant for vomiting and nausea, the effects of over-drinking, the duration being from twelve to thirty-six hours ; and it being the uncontradicted evidence of said James W. Keiser that he had attended the said applicant within four months prior

to the application, and prescribed for vomiting and nausea, induced by drunkenness,—there can be no recovery in this case, and the verdict must be for the defendant.  And the facts being subsequently undisputed, the learned judge reserved the point, but substantially entered judgment on the verdict.  Without going into other matters assigned for error, the facts admitted in this point show such a breach of a material warranty as to require the court to pass upon it as a matter of law.'  The judgment was reversed, and judgment entered for defendant on the point reserved. In *Aid Soc.* v. *White* (100 Pa. St. 12), this court, (Gordon, J.) said: 'In the application appear, among others, the following questions and answers:  "What is you age and occupation?  Answer.  Sixty-two years and four months.  Occupation, laborer.  (2)   Are you married? (b)  Give name of consort.  Answer (a) ———.  (b) Widower."  These questions are very plain and simple, and such as any one capable of entering into a contract might readily comprehend.  They were also material, not only in themselves, but by the terms of the agreement; and the insurer had a right to expect straightforward and truthful answers, and so the court should have instructed the jury?' We held that the questions as to both occupation and marriage were material, and that the court should have so instructed the jury, and should have left nothing to them except the truth or falsity of the answer.  In both the cases *Insurance Co.* v. *Huntzinger,* 98 Pa. St., 41, and (*Insurance Co.* v. *McAnerney,* 102 Pa. St. 335) the questions were as to the amount of other insurance, which it was claimed were falsely answered;  and the decisions were chiefly put upon the ground that the answers were warranties, but the materiality of the questions was assumed in both.  In *Wall* v. *Royal Soc.* (179 Pa. St. 355, 36 Atl. 748,) the questions and answers related to the health of the insured, and the attendance of a physician.  The judgment was reversed on the ground, substantially, that it was

competent to the defendant company to prove the falsity
of the answers, without regard to the question whether they
were warranties, or only misrepresentations."

The averment in the answer that the insured was at-
tended by and prescribed for by a physician was of a ma-
terial fact. The reply does not meet this averment. It fol-
lows that it was only a partial reply to the paragraph in
question.

The fifth paragraph of reply is subject to the same objec-
tions made to the second. The authorities heretofore cited
apply. The sixth paragraph seeks to avoid the materiality
of the agreement made between the defendant and the in-
sured by a statement of facts. It is bad under the authori-
ties cited.

The tenth specification of error is based upon the action
of the court in refusing leave to the defendant to amend the
interrogatories propounded to the jury after it had returned
the general verdict, and before it had returned answers to
interrogatories, and to require the jury to return to the jury
box and return answers to the interrogatories as amended,
and in directing the jury to sign answers to interrogatories
as they stood. This action is assigned as a reason for a new
trial. The facts, as shown by the bill of exceptions, are as
follows: Interrogatories were prepared by both appellant
and appellee and were submitted by the court to the jury.
In interrogatories three, five, ten, eleven, twelve, thirteen,
fourteen, fifteen, sixteen, seventeen, eighteen, nineteen,
counsel for appellant, after the jury had returned into the
court room with their general verdict, and after the general
verdict had been signed, and the interrogatories to the jury
read with the answers of the jury to each interrogatory,
claimed to have discovered a mistake in the interrogatories,
in this, to wit, that in each of said interrogatories the year
"1895" had been written when it was intended to write
therein the year "1894," and counsel for appellant there-

upon requested the court for leave to change said year in each of said interrogatories and that the jury be directed to return to the jury room and answer the interrogatories as amended. To this counsel for appellee objected, stating as reason that it did not appear that counsel for appellant had made a mistake in writing the year "1895" in each year while intending to write the year "1894"; that, in argument, the counsel for appellant read the interrogatories to the jury; had made some changes in several of the interrogatories, in this, that counsel had changed the year "1895" to 1894 in such interrogatories, but that, in the interrogatories now sought to be amended, counsel for appellant had not, at the time of reading the same in argument, changed the same or asked leave to change the same; and that counsel for appellee, in argument, read the interrogatories to the jury, reading the year "1895" in each interrogatory in the presence and in the hearing of counsel for the appellant, and had then stated to the jury that there was no evidence of any sickness or illness of insured during the year 1895, and that the jury should return answer to each of said interrogatories "no evidence"; that counsel for appellant did not at such time make any claim to any mistake in said years, and did not ask to change said interrogatories so as to make the year "1895" read "1894." Section 555 Burns 1894, §546 Horner 1897, does not designate the time when during the trial the request for answers to interrogatories shall be made. It is largely within the discretion of the trial court, and unless there is a clear abuse of this discretion, the action of the trial court will not be disturbed. *Bachman* v. *Cooper,* 20 Ind. App. 173. In the following cases, it has been held that they must be submitted to the court before the argument commences, or they may be properly refused: *Ollan* v. *Shaw,* 27 Ind. 388; *Malady* v. *McEnary,* 30 Ind. 273; *Miller* v. *Voss* 40 Ind. 307; *Glasgow* v. *Hobbs,* 52 Ind. 239. See, also, *City of Huntington* v. *Burke,* 21 Ind. App. 655. Under the circumstances shown, there was no abuse of discretion.

Surpeme Tent, etc., *v.* Volkert.

The other questions discussed, including those raised by cross-assignment of errors, require for their solution an examination of the evidence. It is earnestly and ably argued by counsel for appellee that it is not properly in the record. In view of this claim, and inasmuch as the judgment must be reversed upon the rulings of the trial court upon the pleadings, these other questions are not considered.

Judgment reversed, with instructions to sustain the demurrers to the third, fifth and sixth paragraphs of reply.