## FRED B. JEFFREY, Exor.,

*vs.*

## UNITED ORDER OF THE GOLDEN CROSS.

Androscoggin.    Opinion December 27, 1902.

*Life Insurance.    Warranties.    Representations.*

1. When payment of a policy of life insurance is resisted solely on the ground that the statements of the insured made in his application for insurance, as to his bodily health, were not true, it is immaterial whether the statements be regarded as warranties or as representations.

2. If regarded as representations only, it still follows that such statements must be substantially true, or the policy will be avoided.

3. Substantially true does not mean partly true on the one hand, nor does it mean true in every possible and immaterial respect, on the other. It means true, without qualification, in all respects material to the risk.

4. The answers of an applicant for life insurance, as to his present and past condition of health, are material to the insurance risk proposed and must be true.

5. In this case, the applicant, in answer to questions, stated that she had had dyspepsia "in light form," that to her knowledge and belief there was not then existing any disorder or infirmity or weakness, tending to impair her constitution, and that her health was then good. The evidence clearly disclosed that the applicant for more than twenty years had chronic dyspepsia, which continued to the date of her application, that it did not yield easily to remedies, and that at times it was severe and distressing. It further appears that the dyspepsia was accompanied by chronic constipation to an extent which made it necessary for a great many years to resort to artificial means to produce an evacuation of the bowels. At the same time it appears that she was able, until a few weeks before her death, to work, generally did most of the housework for a small family, was an active member of a "club," and made and received visits as women ordinarily do.

6. In view of these facts, the answers before referred to cannot be regarded as true.

7. The fair implication of the answer that she had dyspepsia in "light form" is that she had it only in light form, which is contrary to the evidence.

8. The statement in an application for life insurance, that the applicant is in good health, does not call for a perfect physical condition, an entire

freedom from ills, but it does mean that the applicant is free from sensible disease or symptoms of disease, and from any apparent derangement of the functions by which health may be tested. The term is to be construed in its ordinary sense, that is, as people ordinarily understand the term good health.

9. Construing the evidence as liberally and as charitably as possible for the insured, the court is of opinion that it is a contradiction of terms to say of a woman afflicted as this woman was, and for so many years, that she was in good health at the time she applied for membership in the defendant society.

10. The facts are not greatly in dispute, but the deductions drawn from them by the jury are so clearly erroneous, that justice requires the verdict to be set aside.

On motion by defendant. Motion sustained. Verdict set aside.

This was an action of debt on a certificate of insurance issued by the defendant society to Lizzie M. Jeffrey, on November 17, 1899, for the sum of two thousand dollars. The deceased died November 19, 1900, from cancer of the stomach, as alleged by the defendant. The case was tried at the January term, 1902. The jury returned a verdict for two thousand one hundred forty-three dollars and sixty-two cents.

The case appears in the opinion.

*Geo. C. Wing,* for plaintiff.

*W. H. Newell and W. B. Skelton,* for defendant.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SAVAGE, J. The defendant is a fraternal benefit society, doing among other things, a life insurance business. *Bolton* v. *Bolton,* 73 Maine, 299. On October 30, 1899, Lizzie M. Jeffrey made written application for membership in the defendant society, and for a life insurance therein. In the application she stated generally that she was "in sound bodily health," and she made answers to certain questions as follows:—

"Have you ever had or been predisposed to any of the following diseases? Dyspepsia?" Ans. "In slight form." "Piles?" Ans. "In slight form."

"Is there to your knowledge or belief, now existing any disorder, or infirmity, or weakness, tending to impair your constitution?" Ans. "No."

"Is your health at this time good?" Ans. "Yes."

"Has any material fact, bearing upon your physical or mental condition and family history, been omitted in the foregoing questions? If so, what?" Ans. "No."

In the application it was stated that "the questions and answers constituting the application form a portion of the contract in case a benefit certificate be issued thereon." The application also contained the following statement signed by Mrs. Jeffrey:—

"It is hereby agreed by the undersigned that if there be in any of the answers herein made any untrue or evasive statements, misrepresentations or concealment of facts, then all claims on the Benefit Fund of the United Order of the Golden Cross shall be forfeited and lost by me."

Upon this application the defendant, on November 17, 1899, issued, under seal, a Benefit Certificate or policy of insurance to Mrs. Jeffrey, describing her as a member of a subordinate "commandery." In the Benefit Certificate it was expressly stipulated that it was issued "upon condition that the statements made by her in her application for membership in said commandery, and the statements certified by her to the Medical Examiner, both of which are filed in the office of the Supreme Keeper of Records, be made a part of this contract."

Mrs. Jeffrey died November 19, 1900, of cancer of the stomach, having complied, after she became a member, with all requirements necessary to keep her in good standing in the defendant society. Suit has been brought upon the Benefit Certificate, by her executor, for the benefit of her son, who is the beneficiary named therein. The defendant resists payment solely on the ground that the statements made in her application, as to her bodily health, and which we have already quoted, were not true, and that such false statements avoided the Benefit Certificate, and that consequently neither she nor her beneficiary obtained any rights under it,

It will not be necessary in this case to decide or to discuss whether under the language of the application and policy, the answers of Mrs. Jeffrey which are under consideration were to be regarded as warranties or representations. For it is immaterial which they were. Taking the view which would ordinarily be most favorable to the plaintiff, that they were technically representations, it would still follow that the answers must be substantially true, or the policy might be avoided. *Maine Benefit 'Association* v. *Parks*, 81 Maine, 79, 10 Am. St. Rep. 240; *Phoenix Mutual Life Ins. Co.* v. *Raddin*, 120 U. S. 183; *Vose* v. *Eagle Life & Health Insurance Co.*, 6 Cush. 42. Substantially true does not mean somewhat true, partially true, on the one hand, nor does it mean true in every possible and immaterial respect, on the other. It means true without qualification, in all respects material to the risk. *France* v. *Ætna Life Ins. Co.*, 9 Fed. Cases, 657, affirmed in *Ætna Life Ins. Co.* v. *Campbell & New England Mut. Life Ins. Co.*, 98 Mass. 381; 1 May on Insurance, § 186. The answers of an applicant for life insurance, as to his present and past condition of health, are unquestionably material to the insurance risk proposed. The policy, if issued at all, will be issued on the faith that they are true. These answers afford in part the test by which it is determined whether to issue a policy at all or not. Hence it follows that such answers are material and must be true. If they were warranties, of course the same result would follow.

The only remaining inquiry is whether the answers in this application were true. The verdict of the jury is to the effect that they were. Is this conclusion so clearly wrong as to require this court to interfere? If it is, it is clearly the duty of the court to set the verdict aside. If not, the verdict must stand.

Some of the objections may be disposed of briefly. The applicant stated that she had had piles "in a slight form." Of course, admitting that she had had them, and undertaking to describe how serious they were, she was bound to speak truly concerning them. In the form in which she made the answer, and in which the defendant society accepted it, it was an expression of opinion as to the seriousness of the trouble, and, if truthfully made, is to be regarded as such.

We think the jury were warranted in finding that the answer was true.

The applicant was asked, at the end, if any material fact bearing upon her physical or mental condition and family history had been omitted in the preceding questions, and answered "no." The defendant contends that at the date of her application she was afflicted with the disease of which she afterwards died, namely, cancer of the stomach. It will be noticed that this question was limited to matters previously omitted. In answer to a previous inquiry, she had already answered that she never had had, nor been predisposed to "cancer or tumor." Furthermore, waiving the question whether an inquiry in that form called for any more than an honest statement of matters within the applicant's knowledge, we are of the opinion that it was fairly open to the jury upon the evidence to answer either way the question whether or not cancer in the stomach was an existing disease in the applicant at the date of the application.

The remaining answers present more serious obstacles to a recovery by the plaintiff. Mrs. Jeffrey, in answer to questions, stated that she had had dyspepsia "in light form," that to her knowledge or belief there was not then existing any disorder or infirmity, or weakness, tending to impair her constitution, and that her health was then good. As it is claimed that these answers were all untrue in one and the same particular, we may consider them together. Now what were the facts? The evidence discloses but little dispute as to the essentials. That offered by the defendant, considered by itself, shows clearly, we think, that the deceased for more than twenty years had chronic dyspepsia, which continued to the date of her application. So far as the evidence shows, it did not yield easily to remedies, though she suffered less from it at some times than at others. It was severe and distressing at times. It was accompanied by chronic constipation, to the extent that she had to use enemas or other artificial means to produce an evacuation of the bowels. She stated to one witness, eight or ten years before her death, that "the state of her stomach and bowels was so inactive that she was unable to have a natural discharge without resorting to artificial means," and that she had been obliged to resort to artificial means for a

great many years. And it does not appear that there was any improvement afterwards, in this particular. At the same time she was able, until a few weeks before her death, to work, generally did most of the housework for a small family, was an active member of a womens' "Club," made and received calls and visits, as women ordinarily do. The testimony of the defendant as to her physical condition, as would naturally be expected, is limited to such as might be elicited from neighbors, acquaintances and servants in and about the house. Such witnesses testified to the visible manifestations of dyspepsia, such as the eructation of gas from the stomach, and to the statements and complaints of Mrs. Jeffrey herself. If this testimony was not true, it was easily within the power of the plaintiff to rebut it, by members of the family, who, better than all others, knew what her condition had been for many years. But the plaintiff offered no such rebuttal. Neither the husband of Mrs. Jeffrey, who is the plaintiff, nor her son, who is named as the beneficiary in this benefit certificate, testified at all in this case. We cannot fail to be impressed by this omission, as, indeed, it is legitimate that we should be. No reason is suggested in evidence or in argument why they did not testify. We think their failure to testify as to matters concerning which they must have been cognizant, very greatly strengthens the position of the defendant as to the facts, which are thus left uncontradicted.

The family physician, called by the plaintiff, testified that she was not a woman of robust, strong constitution, and had not been for eight or ten years, while he had known her, that she enjoyed just fair average health, that she was a woman who kept about her work and enjoyed fair ordinary health. It appeared, however, that the physician in making out the proofs of Mrs. Jeffrey's death for another benefit society, certified that she "had been in rather feeble health for some two or three years." Being asked on cross-examination, "Do you now say that she had been in rather feeble health for two or three years prior to her death," answered "Yes, I think perhaps that is a fair statement; she was not a strong woman and was feeble as opposed to being strong." This answer, if not entirely responsive, is perhaps suggestive under the circumstances.

The answer of the applicant disclosed that she had had dyspepsia "in slight form." As has already been suggested concerning another matter, this answer conveyed an expression of opinion, and although it tended to minimize the difficulty and hence was not strictly true, still if it was an honest expression of opinion—the truth as she understood it to be—and if the society was willing to accept her judgment without further inquiry, it cannot now complain. *Peacock* v. *New York Life Ins. Co.*, 20 N. Y. 293. But we think the fair implication of the answer, and the one unquestionably intended, was that she had dyspepsia *only* in a slight form. And making all allowances for disparity in judgment, we are unable to perceive how a woman who had had dyspepsia for twenty years to the extent disclosed in this case, could truthfully answer that she had had dyspepsia only in a slight form.

Again, as to the declaration that her health was then good. It is well settled that a statement in an application for life insurance, that the applicant is "in good health," does not call for a perfect physical condition, an entire freedom from all ills. It does not mean that the applicant is entirely free from all infirmities. But it does mean that the applicant is free from sensible disease, or symptoms of disease, and from any apparent derangement of the functions by which health may be tested. It means good health as the term is ordinarily used and understood by people. It is an expression of common significance, and is to be interpreted as such. It is more easily defined than applied. Yet the definitions given by courts and law writers may aid in making application. "The term good health, as here used, does not import a perfect physical condition. It would not be reasonable to interpret it as meaning absolute exemption from all bodily infirmities, or from all tendencies to disease. The term good health is to be considered in its ordinary sense, and means that the applicant was free from any apparent sensible disease, or symptoms of disease, and that he was unconscious of any derangement of the functions by which health could be tested." *Goucher* v. *North-Western Traveling Mens' Asso.*, 20 Fed. Rep. 596. "In construing a policy of life insurance it must be generally true that, before any temporary ailment can be called a disease, it must be such as to indicate a vice in

the constitution, or be so serious as to have some bearing upon general health and the continuance of life, or such as according to common understanding would be called a disease." *Cushman* v. *U. S. Life Ins. Co.*, 70 N. Y. 72. Good health does not necessarily nor ordinarily mean that one is exempt absolutely from all the ills that flesh is heir to. The epithet "good" is comparative. It does not require absolute perfection. *Peacock* v. *New York Life Ins. Co.*, 20 N. Y. 293. "The 'sound health' evidently meant in the application is a state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously, not a mere temporary indisposition which does not tend to weaken or undermine the constitution of the assured." "Sound health means freedom from serious disease, or grave, important, weighty trouble." *Brown* v. *Metropolitan Life Ins. Co.*, 65 Mich. 306, 8 Am. St. Rep. 894. "Good health means apparent good health, without any ostensible, or known or felt symptoms of disorder, and does not exclude the existence of latent unknown defects." May on Ins., § 295. "The term good health is to be construed in its ordinary sense, that is, as people ordinarily understand good health. It is to be construed not with technical nicety, with great scrupulousness, but as people ordinarily understand the term good health. Slight, infrequent, transient disturbances not usually ending in serious consequences may be consistent with the possession of good health as that term is employed in contracts of this character." In *Maine Benefit Asso.* v. *Parks*, 81 Maine, 83, this court, speaking of "good health," approved the expressions found in 2 Pars. Cont. (6th Ed.) 465, to the effect that "the health of the body required to make the policy attach does not mean perfect and absolute health, for it may be supposed that this is seldom to be found among men. Nor can there be any other definition or rule as to this requirement of good health than that it should mean that which would ordinarily and reasonably be regarded as good health. Nor should we be helped by saying that this good health must exclude all disorders, or infirmities which might possibly shorten life. The good faith of the answers should be perfect. The presence of it goes very far to protect a policy, while a want of it would be an element of great power in the defense."

These general views are well illustrated by two dyspepsia cases which we cite. One is *Morrison* v. *Wisconsin Odd Fellows Mut. Life Ins. Co.,* 59 Wis. 162, in which it was held that "a touch of dyspepsia coming on" which manifests itself only after long intervals, which yields readily to medical treatment, and which is not shown to have been organic and excessive, is not inconsistent with a representation that the person so affected is in sound health, as that term is employed in contracts for life insurance. The other is *New York Life Ins. Co.* v. *Flack,* 3 Md. 341, 56 Am. Dec. 742, in which it is said that a predisposition to the disease of dyspepsia to such a degree as to seriously affect the health and to produce bodily infirmity is incompatible with a statement of good health. See May on Insurance, § 295.

From these definitions of good health as a life insurance term, it is evident that, when applied to individual cases, it must frequently be a matter of grave doubt whether the applicant has, or lacks, good health; and in cases of doubt, the tendency rather is to resolve the doubt in favor of the insured. Certainly, the court would hesitate long to interfere with the verdict of a jury, whichever way it was, in a case of real doubt. But in this case, upon the evidence disclosed, the court is of opinion that there should be no real doubt. Construing the evidence as liberally and as charitably as possible in favor of the insured, it seems to us a contradiction of terms to say of a woman afflicted as this woman was, and for so many years, that she was in good health at the time she applied for membership in the defendant society. It is unnecessary to consider the other disputed answer. At the trial the facts were not greatly in dispute, but the deductions drawn from them by the jury are, we think, clearly erroneous. Justice requires the verdict to be set aside.

*Motion sustained.   New trial granted.*