MARY E. FITZGERALD *v.* METROPOLITAN LIFE INSURANCE COMPANY.

Special Term at Rutland, November, 1914.

Present:    POWERS, C. J., MUNSON, WATSON, HASELTON and TAYLOR JJ.

Opinion filed August 14, 1916.

*Life Insurance — Representations — Materiality — Warranty —
    Fraud—Delivery of Policy—Concealment of state of health
    of insured—Intent to deceive—Exceptions—Evidence—
    Motion to set aside judgment.*

In an action of assumpsit brought by the beneficiary upon a policy of
    life insurance, it appeared that the insured signed an application
    and was examined medically. The insurance company declined to
    issue the policy, because of the lack of insurable interest in the
    beneficiary named; and the insured later signed a second applica-
    tion with the beneficiary changed, but did not undergo another·
    medical examination. *Held,* the answers given by insured to
    questions in the medical examination related to the time of such
    examination; and were not representations of conditions existing
    at the date of the second application or of the issuing of the policy.

If a material change for the worse in the health of an applicant for
    life insurance takes place after the making of the application and
    medical examination, and before the issuing of the policy, it is
    the duty of the applicant to disclose it, if known to her.

If the truth of the matter stated in an application for a policy of life
    insurance is warranted, its falsity will avoid the policy, even
    though the matter is not material to the risk. If the statement
    so made is a mere representation, its falsity will not avoid the
    policy, unless the matter stated is thus material.

Insurance procured by means of representations which are intentionally
    fraudulent, and are in fact relied upon, is voidable, even though
    the representations relate to matters not material.

A material fact, a representation in regard to which is made in an
    application for insurance, is one the knowledge or ignorance of
    which would materially influence the insurer in making the con-
    tract at all, or in estimating the degree and character of the risk,
    or in fixing the rate of insurance.

Representations in an application for life insurance regarding a material matter, which are false in fact, will avoid the policy issued upon such application, although not made with fraudulent intent.

The failure of an applicant for life insurance, even in cases of warranty, and with respect to inquiries regarding particular diseases, to disclose temporary ailments not serious in their nature, will not prevent a recovery in an action upon the policy.

Although the authorities are not agreed as to the admissibility in evidence of the declarations of the insured as to her health and symptoms, where the insurance is not for the benefit of the insured, yet such evidence is material in an action upon a life insurance policy upon the issue of the false representations of the insured in obtaining the insurance, and, if objected to only as immaterial and matter of opinion, is properly in the case.

The materiality of representations in an application for life insurance, as to residence, occupation and financial condition, is ordinarily for the jury.

Where an applicant for life insurance assumes to have knowledge regarding a matter which the insurer might reasonably suppose to be within her knowledge, and represents falsely in regard thereto, in the absence of an explanation, the law infers an intent to deceive upon the part of the applicant.

False answers in an application for life insurance, which close the avenues of inquiry as to material matters may themselves be material.

Where it is claimed, in an action upon a life insurance policy, that the insured falsely represented in the application regarding spitting of blood, the evidence of this symptom is generally submitted to the jury.

The judgment of the trial court in overruling a motion to set aside a verdict will be reversed only for some error of law. Grounds upon which the trial court could, in its discretion, have set aside the verdict are not available in Supreme Court.

The trial court cannot be charged with reversible error in giving an instruction which was in harmony with the theory of the defence, as indicated by its requests, and to which no exception was taken by the defendant.

Where the defendant, in an action upon a policy of life insurance, requests that the materiality of certain false representations made by the insured in the application for insurance, shall be submitted

to the jury, it assumes that there is evidence tending to support the plaintiff's claim that the representations are not material, and cannot sustain a motion to set aside the verdict on the ground that there was no such evidence; because this would give the defendant the benefit of exceptions not taken and permit it to prevail on a theory of the case different from that on which it was tried.

Where the evidence tended to show that the plaintiff, who was the sole beneficiary under a policy of life insurance, induced the agent of the defendant company to deliver to her the policy, by representing to him that the insured was in good health, knowing that the insured was then suffering from pulmonary tuberculosis, and it did not appear that the policy had been sent by the company to the agent for unconditional delivery, the question of the plaintiff's fraud in procuring the delivery of the policy is for the jury.

The test of the sufficiency of an exception to the charge of the Court is whether it fairly directs the attention of the Court to the claimed error.

In the absence of a mutual intention to the contrary, a contract in writing is not consummated until the writing is delivered; but there can be no mutual binding intention in this respect if the action of one of the parties is induced by fraud.

Where there is a claim of fraud in the application as well as in the procurement of a policy of life insurance, it cannot be said that the transmission of the policy from the insurance company to the agent is the same as a delivery to the insured, without considering whether there was that mutuality of agreement and intention which excuses actual delivery.

Where the plaintiff, who sues as sole beneficiary under a policy of life insurance, obtained the policy from the Company's agent by her false statement regarding the health of the insured, and for the purpose of delivering the policy to the insured, such statement, being made as of her own knowledge, and unexplained, will be inferred to be wilfully false.

A question not raised upon trial will not be considered by the Supreme Court.

ASSUMPSIT brought by the plaintiff, as beneficiary, upon a policy of insurance issued by the defendant upon the life of Winnie McLean. Plea, the general issue, with notice of the following special matters in defence; that the policy was procured

by false and fraudulent representations made by the insured in her application for the policy, and in her statements to the medical examiners, and also by false and fraudulent representations made by the plaintiff; that the policy was obtained as the result of a fraudulent and unlawful combination between the plaintiff and the insured; and that the possession of the policy was obtained by the plaintiff by means of false and fraudulent representations made by her to the agent of the defendant.

Trial by jury at the December Term, 1912, Bennington County, *Fish,* J., presiding. Verdict and judgment for plaintiff. The defendant excepted. The opinion states the case.

*W. B. Sheldon, F. C. Archibald* and *Martin T. Nachtmann* for the defendant.

*Holden & Healy* and *D. A. Guiltinan* for the plaintiff.

Munson, J. This suit is brought on a policy of insurance issued by the defendant on the life of Winnie McLean, a married woman twenty-four years of age, which was first made payable to John McLean, her son, with right of revocation, and was afterwards made payable to the plaintiff, her sister, without right of revocation. The policy was issued September 21, 1911; the change of beneficiary was made January 31, 1912; and the insured died May 3, 1912. The claim is contested on the ground that the policy was procured by the false and fraudulent representations of both the insured and the plaintiff, and as the result of a fraudulent and unlawful combination between the two; and on the further ground that the plaintiff obtained possession of the policy by means of false and fraudulent representations.

It apeared from exhibits introduced by the defendant that there were three policies on the life of Mrs. McLean of earlier date than the one in suit, two of which were issued by the John Hancock Mutual Life Insurance Company and one by the defendant. The first of the John Hancock policies was issued to her in 1905 and before her marriage. The second John Hancock policy was issued July 5, 1911, on an application made June 22 and a medical report dated June 25. The first policy of the defendant was issued July 24, 1911, on an application made July 12 and a medical report dated July 15. In this policy Frank McLean, the husband of the insured, was named as beneficiary.

There were two applications for the policy in suit. The first was dated August 21, 1911, and designated the plaintiff as beneficiary, without right of revocation; and a statement in continuation of this application and an accompanying report of the examining physician were made August 26. The defendant refused to issue a policy on this application on the ground that the person named as beneficiary had no insurable interest,—the applicant having a husband and child living. The plaintiff, the designated beneficiary, was informed of this refusal, and thereupon procured the making of the second application. This was dated September 18, 1911, and upon its receipt at the home office of the defendant the policy in suit was issued. The report of the medical examiner stated that there were no indications of disease of the organs of respiration, and represented the applicant to be in good health and of sound constitution. Her weight was given as 130 pounds and her respiration as 18 to the minute.

Uncontradicted evidence introduced by the defendant tended to establish the following matters relating to Mrs. McLean's life between August 26, the date of the medical report sent to the company, and September 21, the date of the policy. August 30 she applied for examination at a charitable institution for the relief of persons having pulmonary tuberculosis in its incipient stages, located at Troy, N. Y., and herein called the dispensary, and was examined by the physician in charge. She told the physician that she thought her trouble began with a cold which she caught July 15; that from that time she had lost appetite and weight and had night sweats and a cough; that the cough had gradually grown worse and produced large expectorations of sputum; and that she had a slight hemorrhage August 15. The physician's examination disclosed the usual symptoms and marks of pulmonary disease, which are given in detail in the exceptions. Her weight was found to be 97 pounds, and her respiration about 26 in a minute. Mrs. McLean returned to the dispensary September 6, and was again examined and found to be somewhat worse. She returned September 13 for a further examination, and was then found to have passed the incipient stage of tuberculosis. September 15 she entered the Lake View Sanitarium in Troy, a charitable institution for the care and treatment of persons suffering from pulmonary tuberculosis, and was examined by the physician in charge, who diagnosed the case as pulmonary tuberculosis in an advanced stage. In connection with this

examination Mrs. McLean told of a hemorrhage which occurred September 1. She remained in the sanitarium until September 25, during which time she was for the most part confined to her bed.

The physician who examined Mrs. McLean as an applicant, and made the report of August 26, was the regular local examiner of the defendant. He was called as a witness for the defence, and testified in substance that his examination of the chest was without a removal of the underclothing; that the examination was by auscultation, by the ear alone and with the stethoscope, and that he found the condition of the lungs to be as stated in his report; that the number of respirations per minute was determined by count, but that the weight was given from her statement.

The sheet of the application blank containing the questions to be answered by the examining physician has also a series of statements to be made by the applicant to the physician. Among these are statements relating to diseases and infirmities, previous injury or illness, treatment by an attending physician or in a dispensary, being in an institution as an inmate, and the previous taking of life insurance. The list of diseases includes consumption, disease of the lungs, habitual cough, hemorrhage, and spitting or raising blood. These statements are framed as negations, with an addition showing that any exception is to be given in a blank following the statement. They appear here above the signature of the applicant, and with the spaces left blank. The examiner testified that he read each statement to the applicant and asked her if there were any exceptions, and that she said there was none. He did not claim to have an independent recollection of this, but said he relied upon the paper.

The plaintiff's connection with the procurement of the insurance is shown by the testimony of Schiemenz, who was a local collector and solicitor of the defendant residing at Bennington. He visited the Fitzgerald house in North Bennington every week to make collections; and on one of these occasions Mrs. Fitzgerald asked him if it would not be a good plan to take out a policy for Mrs. McLean. Mrs. McLean was there at the time and consented to this being done, and the first application was then prepared and signed. All the inquiries were answered by Mrs. McLean except that calling for the designation of one to receive the proceeds. This was answered, after a little talk

about it, by Mrs. Fitzgerald. When the application was returned Schiemenz saw Mrs. Fitzgerald and told her the company would not issue a policy without having the beneficiary changed, and she said they would change the beneficiary. He inquired for Mrs. McLean and was told by Mrs. Fitzgerald that she had gone to Troy. He then wrote the second application on Mrs. Fitzgerald's suggestion, changing the answers regarding the beneficiary as she directed. She said she was going to Troy and would take the application down and have it signed, and he left it with her for that purpose. She returned it to him with Mrs. McLean's name affixed, and he signed as witness. When he received the policy he took it to Mrs. Fitzgerald's to deliver and inquired for Mrs. McLean. Mrs. Fitzgerald said she was in Troy, and told him to leave the policy and she would deliver it to her. He asked her if Mrs. McLean was in apparently good health, and she said "Yes," and he thereupon left the policy. The plaintiff was in court throughout the trial, but did not take the stand.

In preparing the application of September 18, Schiemenz entered, with but slight and unimportant variations, the answers contained in the application of August 21, except the two which related to the beneficiary and were changed by direction of the plaintiff. No other medical examination was had than that of August 26, and no other report made. These applications contain a printed declaration and agreement that the statements and answers of the applicant contained therein, and also her statements and answers to the medical examiner, are correct and true, and are to form the basis of the contract of insurance if one is issued. Defendant's attorney argued to the jury that this provision was a warranty that the statements and answers referred to were true at the time the second application was made. Plaintiff's attorney argued to the jury that this provision had no relation in point of time to the execution and delivery of the second application, but related back to the date of the medical report, and that the character of the applicant's statements was to be determined by the knowledge she had at that time.

The question thus raised bears upon the negative statements of the insured concerning the existence of pulmonary disease, treatment by a physician within two years, and having been an inmate of an institution. If the statements are to be taken as having reference to the date of the second application, their

known falsity in the two particulars last named will be at once established. And if considered with reference to the date of the medical report and the applicant's understanding of her condition at that time, with a result favorable to the plaintiff, there will remain for further consideration the evidence of the applicant's statement at the dispensary regarding the persistent cough and slight hemorrhage previous to that date.

Several claims of misrepresentation are made which are not dependent upon the question raised regarding the two applications. The residence of the applicant is given as North Bennington instead of Troy, and her husband's name as Mack McLean instead of Frank McLean; and these answers are claimed to have been made to conceal the identity of the applicant and the fact that she was already insured in defendant company. No question is made as to there being in force at that time two other policies on the applicant's life. The application states that she is employed as a table worker by the E. Z. Waist Company at North Bennington, that her work is the source of her income, and that she expects to pay the premiums out of her own means. There was undisputed evidence that she had not worked for the E. Z. Waist Company for over five years, and no evidence that she had any occupation except housekeeping, and no evidence of any income.

Certain provisions in the policy are to be considered in connection with the declaration contained in the application as before stated. The application is mentioned as one of the considerations of the policy, and is attached to and made a part of it; and the policy and the application therefor are declared to constitute the entire contract between the parties. The policy provides that ''all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties,'' and that no such statement shall avoid the policy, or be used in defence of a claim made under it, unless it is contained in the written application therefor and a copy of such application is securely attached to the policy when issued.

The defendant argues certain exceptions relative to the charge, and a motion to set aside the verdict as not warranted by any fair construction of the evidence; which motion presented to the court specifically and in detail the defendant's claims regarding the matters above stated. The fundamental propositions of the plaintiff are, in brief, that the only defence available

to the defendant under the terms of its policy is fraud; that there can be no fraudulent representations without knowledge and intent; and that there was ample evidence to justify the jury in finding that the insured made the statements regarding her physical condition in ignorance of any facts to the contrary and in good faith.

Whatever conclusions might be drawn from the inconsistent results of the medical examinations of August 26 and August 30, there can be but one conclusion as to the condition of the insured at the date of the policy, September 21. She was an inmate of an institution for consumptives, seriously ill with pulmonary tuberculosis, the disease which caused her death. The issuance of a policy on the life of one in this condition presents a situation which invites the careful scrutiny of the Court regarding all the controverted matters.

Our principal inquiry must begin with a determination of the effect to be given to the printed declaration and agreement contained in that part of the application blank which is signed by the insured and covers all the statements and answers given both to the solicitor and the medical examiner. The paper attached to the policy as the application on which it is issued consists of the application dated September 18 and the medical report dated August 26. This use of the second application must have been contemplated by both parties, for it was this application which made the designation essential to the issuance of a valid policy. So we have an application, properly made a part of the policy, which presents the apparent inconsistency of a medical report made three weeks before the insurance was applied for. It is true that the insured has, by her signature, repeated under date of September 18 the answers which she gave to the solicitor August 21, other than those pertaining to the beneficiary; and that the printed form on which both sets of answers appear declares that the statements and answers made to the medical examiner are correct and true. The defendant claims that by virtue of this clause the insured also repeated as of September 18 the answers in fact given to the medical examiner August 26. It is said that this clause was manifestly intended as a guaranty by the applicant that there had been no change in her condition between the time of the medical examination and the making of the second application; and that the defendant's reliance on this effect of the clause led it to dispense with a

second examination. The force of this argument is somewhat limited by the fact that this provision is in the standard form of application prepared for use in the ordinary cases which make up the great body of the defendant's business. Its obvious reference is to the applicant's answers as given to the medical examiner at the time of his examination. There is nothing here to justify a construction which would make fraudulently false, answers which were true at the time they were given. The only purpose of the second application was to effect a necessary change in the beneficiary, and the defendant was content to issue the policy when that change was made without requiring a second examination. The application proper and the medical continuation stand on different grounds. The answers entered by the solicitor in the first application, other than those to be changed, were written into the second application, which was made complete in all respects, and executed at a later date to take the place of the first. But the difference is not important here, for the matters covered by the answers to the solicitor stood the same at both dates. If the company can defend because of conditions existing at the date of the second application or the date of the policy, it must be on another ground.

It is held that if a material change for the worse in the health of the applicant takes place after the making of the application and medical examination and before the issuing of the policy, it is the duty of the applicant to disclose it. 25 Cyc. 797 and cases cited; note 3 Am. St. Rep. 637; *Whitley* v. *Piedmont, etc., Life Ins. Co.*, 71 N. C. 480. This implies knowledge on the part of the applicant; and it is not clear from the testimony of the sanitarium physician that Mrs. McLean was informed of or realized the seriousness of her condition. There are many cases where it is held that there can be no recovery on the policy if the insured was not in good health at the time it was issued. As far as we have seen, these were cases where it was provided that the policy should not take effect unless the insured was alive and in good health at that time. See note 17 L. R. A. (N. S.) 1144. The provision in this case was that the company should incur no liability unless the policy was issued and delivered in the lifetime of the insured. It was so delivered; and there was nothing in the stipulations which became a part of it that expressly charged the insured with the duty of making a disclosure subsequent to the medical examination.

By the terms of the policy the statements of the applicant, in the absence of fraud, are to be deemed representations and not warranties. So the case calls for a consideration of the rules applicable to representations as distinguished from warranties. The differing rules on this subject have relation to the materiality or immateriality of the thing stated. If the truth of the matter stated is warranted, its falsity will avoid the policy, even though the matter is not material to the risk. If the statement is a mere representation, its falsity will not avoid the policy unless the matter stated is thus material. But insurance procured by means of representations which are intentionally fraudulent, and are in fact relied upon, is voidable, even though the statements relate to matters not material. Note 16 Am. Dec. 463; 16 Ency. Law, (2nd Ed.) 922 (4); 25 Cyc. 796; *Mosley* v. *Vt. Mut. Fire Ins. Co.,* 55 Vt. 142, 151.

The defendant submitted two requests relative to material representations and concealments which the court failed to comply with. The defendant claims that it was entitled to a compliance with both requests, and the plaintiff insists that both were defective and unsound in numerous particulars. The substance of them was that if the material representations which directly affected the risk were not substantially true the policy would be void; and that if false statements or concealments of material matters were knowingly made by the insured they were fraudulent and would avoid the policy. These were matters necessarily presented in some form in submitting the case to the jury, and a general discussion regarding materiality and intent will cover sufficiently for our present purpose the more important questions raised concerning the requests.

It now becomes necessary to inquire what representations are material to the risk, and how the question of materiality is to be determined. In charging the jury upon this subject the court made use of the following rule, which is amply supported by authority and was adopted in the opinion in *Mascott* v. *First Nat. Fire Ins. Co.,* 69 Vt. 116, 37 Atl. 255. "Any fact is material the knowledge or ignorance of which would materially influence the insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance." Nothing further was said on the subject, except that the question whether the applicant's answers were material to the risk was for the jury. This comprehensive submission to the

jury was perhaps due to the following statement in the Mascott opinion: ''The materiality of a representation or concealment is a question for the jury.'' In view of this statement, a reference to the question there passed upon is desirable. The suit was on a fire insurance policy; and the court considered that it could not be said as matter of law that the existence of a small mortgage on the property was a fact material to the risk. It did not appear that any written application for insurance was made by the plaintiffs, nor that the agent of the defendant made any inquiries respecting incumbrances; and there was nothing in the policy on the subject of incumbrances. The question there was whether the company could treat the plaintiffs' failure to disclose the mortgage as a material concealment, when it had left them to conjecture what facts and circumstances were material. The case is certainly not an authority for saying that answers to specific inquiries are necessarily for the jury. But no exception was taken to the charge on this subject.

The opinion in the Mascott case includes in the essentials of a misrepresentation in insurance, an intention to deceive; citing *Daniels* v. *Hudson River Fire Ins. Co.,* 12 Cush. (Mass.) 416, 59 Am. Dec. 192, and *Clark* v. *Union Mut. Fire Ins. Co.,* 40 N. H. 333, 77 Am. Dec. 721. This part of the opinion was not essential to the decision, and is not an accurate statement of the pronouncement in either of the cases cited. The court's instructions to the jury regarding misrepresentations were framed on the lines of this opinion; and upon the charge as given the jury could not have returned a verdict for the defendant upon any of the statements of the insured, without finding from the evidence, not only that they were false in fact and material to the risk, but that they were made with intent to deceive. The first part of the court's instruction was an exact compliance with a request of the defendant, but the request did not include the further clause which required the finding of an intent to deceive in passing upon matters stated positively as true without knowing that they were true. But there was no exception to the inclusion of this further instruction.

There is ample authority for saying that representations regarding a material matter which are false in fact will avoid the policy although not fraudulently made. *Bankers' Life Ins. Co.* v. *Miller,* 100 Md. 1, 59 Atl. 116; *Phoenix Mut. Life Ins. Co.* v. *Raddin,* 120 U. S. 183, 30 L. ed. 644, 7 Sup. Ct. 500; *Campbell* '

v. *N. E. Mut. Life Ins. Co.,* 98 Mass. 401; *Jeffrey* v. *United Order, etc.,* 97 Me. 176, 53 Atl. 1102; *Maine Benefit Assn.* v. *Parks,* 81 Me. 79, 16 Atl. 339, 10 Am. St. Rep. 240; *Provident, etc., Soc.* v. *Dees,* 120 Ky. 285, 86 S. W. 522; *Schas* v. *Equitable Life Ins. Co.,* 166 N. C. 55, 81 S. E. 1014; *Kennedy* v. *Prudential Ins. Co.,* 177 Ill. App. 50; and see *March* v. *Metropolitan Ins. Co.,* 186 Pa. St. 629, 40 Atl. 1100, 65 Am. St. Rep. 887; *Murphy* v. *Prudential Ins. Co.,* 205 Pa. St. 444, 55 Atl. 19; *Grand Fraternity* v. *Keatley,* 4 Boyce (Del.) 308, 88 Atl. 553; *Farmers' Ins. & Loan Co.* v. *Snyder,* 16 Wend. (N. Y.) 481, 30 Am. Dec. 118. It is said in the case first cited that the better authorities are agreed on this proposition. In *Schwarzbach* v. *Ohio Valley Pro. Union,* 25 W. Va. 622, 52 Am. Rep. 227, the writer of the opinion suggests that the conflict of authority on this subject has arisen from a failure to recognize and apply the doctrine of legal fraud as presented in *Cabot* v. *Christie,* 42 Vt. 121, 1 Am. Rep. 313, and in other cases cited. It is said in *Cabot* v. *Christie* that "A representation of a fact, as of a party's own knowledge, if it prove false, is, unless explained, inferred to be wilfully false and made with an intent to deceive, at least in respect to the knowledge which is professed." The importance of this doctrine in its application to insurance cases is apparent when we remember that nearly all the inquiries made by the company relate to matters which are within the knowledge of the insured, or matters which the company may reasonably suppose to be within his knowledge.

But some further consideration must be given in this connection to inquiries relating to diseases and the symptoms of diseases. These are matters which pertain to the applicant personally, and yet may not be within his knowledge. He may know of certain symptoms without being aware of their significance. Some conditions which to his experience indicate a harmless temporary ailment may be the beginnings of a fatal disease. The infirmities of the race are such that the man in absolutely perfect health cannot well be taken as the standard. So it is held, even in cases of warranty, and even with respect to inquiries regarding particular diseases, that the failure to disclose temporary ailments not serious in their nature will not prevent a recovery. *Billings* v. *Metropolitan Ins. Co.,* 70 Vt. 447, 482, 41 Atl. 516; *Moulor* v. *Am. Life Ins. Co.,* 111 U. S. 335, 28 L. ed. 447, 4 Sup. Ct. 466; *Hann* v. *National Union,* 97 Mich. 513, 56 N. W. 834, 37 Am. St. Rep. 365. A ground for this

holding may be found in *Cabot* v. *Christie,* where it is said that a sufficient explanation of a representation which, if not explained, will be inferred to be wilfully false, may sometimes arise "from the nature of the subject itself, or from the situation of the parties being such that the statement of knowledge could only be understood as an expression of strong belief or opinion."

It is possible that this applicant could fairly be considered guiltless of fraud, actual or legal, in saying that she had never had consumption, or disease of the lungs, or even "hemorrhage." But the list included habitual cough and spitting or raising blood, and these were matters which might well be assumed to be within her knowledge, and regarding which there is evidence that she had knowledge,—if certain testimony received under a general objection is available for this purpose. It appears from the declarations of the insured, testified to by the physician who examined her at the dispensary, that she had a persistent cough and a slight hemorrhage previous to the making of the application. The authorities are not agreed as to the admissibility of evidence of this character when the insurance is not for the benefit of the insured. *Swift* v. *Mass Mut. Life Ins. Co.,* 63 N. Y. 186, 20 Am. Rep. 522; *Schwarzbach* v. *Ohio, etc., Union,* 25 W. Va. 622, 52 Am. Rep. 227; *Dilleber* v. *Home Life Ins. Co.,* 69 N. Y. 256, 25 Am. Rep. 182; *Mobile Life Ins. Co.* v. *Morris,* 3 Lea (Tenn.) 101, 31 Am. Rep. 631; *Singleton* v. *St. Louis Ins. Co.,* 66 Mo. 63, 27 Am. Rep. 321. But this question was not saved by the exceptions taken. As soon as the attention of the dispensary physician was directed to Mrs. McLean's attendance at the dispensary his testimony was objected to as immaterial and was admitted subject to exception. When the witness was asked to state the results of his examination, the plaintiff objected if the question called for an opinion, and a further exception was noted. At two subsequent stages of the examination the plaintiff objected to the opinion evidence, and exceptions were allowed. At no time was there a specific objection to the insured's declarations, or general objection to the evidence as incompetent. The evidence of her declarations was material to the issue, and not being objected to as incompetent was properly in the case. See *Taplin* v. *Harris,* 88 Vt. 15, 90 Atl. 956. It went to the jury with the other testimony, without comment or mention. There is nothing in the exceptions or transcript that indicates that any objection to its use was made or exception taken.

It appears then that the policy was issued upon untrue statements as to residence, occupation, means of payment, existing insurance, and symptoms of pulmonary disease. The statement as to occupation was manifestly false to the knowledge and understanding of the applicant. But, inasmuch as the occupation of the insured was in fact housekeeping, it is probable that the misstatement did not injuriously affect the company as regards the risk and the rate of insurance; and the materiality of representations as to residence, occupation and financial condition is ordinarily for the jury.

The statement made by Mrs. McLean regarding other insurance requires separate consideration. Both to the solicitor and the medical examiner she stated in reply to inquiries contained in the printed forms that she was not insured in the defendant or in any other company. It appears from exhibits in the case that within two months before making these statements she had signed two applications for insurance on which policies had been issued, and there was undisputed testimony that both these policies, as well as one of earlier date, were in force when the statements were made. It is said in the cases generally that this is a material inquiry, and in many of them that the question of its materiality is for the court. It is argued that these policies were not payable to Mrs. McLean, and that there was no evidence that she knew of their existence, and that if she did know of them there was no evidence that she concealed their existence with fraudulent intent. *Cabot* v. *Christie* affords a sufficient answer. She assumed to have knowledge regarding a matter which the insurer might reasonably suppose to be within her knowledge, and in the absence of explanation the law infers an intent to deceive. It must be remembered also that false answers which close the avenues of inquiry as to material matters may themselves be material. See *Cobb* v. *Covenant, etc., Assn.*, 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619; *United Brethren, etc., Co.* v. *O'Hara*, 120 Pa. 256, 13 Atl. 932.

As the evidence stands, the applicant had had what the physician designated as a slight hemorrhage. The insured's declaration to this effect established both the fact and her knowledge of it, and falsified her statement to the examiner that she had never had spitting of blood,—if that statement is to be taken literally. But evidence of this symptom is generally submitted to the jury; for the source of blood ejected from the mouth is

not a matter of certainty, and if found to come from the lungs the extent of the hemorrhage is often held entitled to consideration in determining the effect of the statement as a representation. Some of the views taken of this subject may be found in *Campbell* v. *N. E. Mut. Life Ins. Co.*, 98 Mass. 401; *Peterson* v. *Des Moines Life Asso.*, 115 Iowa 668, 87 N. 'W. 397; *Singleton* v. *St. Louis Ins. Co.*, 66 Mo. 63, 27 Am. Rep. 321. The question here is not whether the applicant should have disclosed this under a general inquiry. The fact was specifically called for. It is essential that the insured be informed of symptoms which are often indicative of fatal disease. If it had appeared in the report of the medical examiner that Mrs. McLean had had in connection with a persistent cough a single instance of spitting blood, it is pretty certain that the examiner would not have added his recommendation of the applicant as a first class risk, and that the company would not have issued the policy without making special inquiries. In the event of a new trial, there will be an opportunity to raise an important question regarding the admissibility of evidence, the decision of which may eliminate this feature of the case.

As we have seen, the court submitted the question of materiality without special instructions. No separate reference was made to any representation. There was no request that called for a different course. The defendant's requests were framed on an assumption that the question of materiality as to all the representations was for the jury. No exception was taken to the charge in this respect. Our previous discussion regarding the materiality of the several statements and the forum of determination has not been intended as a disposition of the questions considered, but as a presentation of the matters actually involved in the case and of the position taken by the defendant regarding them on the trial, as bearing upon the claims now made in support of the motion to set aside the verdict.

This brings us to the question whether the court erred in overruling the defendant's motion. The spitting of blood and the existence of other insurance being facts conclusively established, if the question of materiality as to either was properly for the determination of the court the defendant could have sustained a motion for the direction of a verdict. But if this be so, the fact that there was no motion for a directed verdict is not in itself a bar to a motion to set aside an adverse verdict for

want of evidence to support it.    See 14 Ency. Pl. & Pr. 785, and
cases cited.    If there were any grounds on which the trial
court might have set aside this verdict in the legitimate exercise
of its discretion, those grounds are not available here.    The ac-
tion of the lower court in overruling the motion can be reversed
only for some error of law.    And if the court erred in submitting
to the jury the materiality of either of the representations above
referred to, it cannot well be charged with reversible error in
giving an instruction which was in harmony with the theory of
the defence as indicated by its requests, and which was not ex-
cepted to.    The defendant practically conceded by the frame of
its requests that the question of materiality as to all the appli-
cant's statements was for the jury.    In assuming that the ques-
tion of their materiality was for the jury, the defendant assumed
that there was evidence tending to support the plaintiff's claim
regarding them, and we cannot properly sustain the motion on
the theory that there was no such evidence.    This would be
to give a party the benefit of exceptions not taken, and permit
him to prevail on a theory of the case different from that on
which it was tried.

There remains for consideration the claim that the delivery
of the policy was fraudulently procured.    The correctness of
Schiemenz's account of Mrs. Fitzgerald's connection with the
making of the application and the receipt of the policy is suf-
ficiently attested by the fact that she heard the testimony and did
not take the stand to contradict it.    See *Jeffrey* v. *United Order*,
97 Me. 176, 53 Atl. 1102.    She was named as beneficiary in the
first application without right of revocation, and directed the
substitution in the second application of the insured's son, with
right of revocation; and it may reasonably be supposed that she
was the real party interested in consummating the contract.
Schiemenz testified that he would not have given her the policy
if she had not told him that Mrs. McLean was in apparently good
health.    If the second application bears the correct date, and if
Mrs. Fitzgerald personally took it to Troy as she proposed to do,
she saw Mrs. McLean and took her signature in the sanitarium.
The salvation army captain who looked after Mrs. McLean's wel-
fare, testified that on one or more occasions during her first stay
at the sanitarium Mrs. Fitzgerald left his house saying she was
going there to see her sister, and returned saying that she had
been there; and that on such occasions she would tell about the

condition of her sister's health. These things were evidence tending to show that when Mrs. Fitzgerald made the statement testified to and received the policy she had knowledge of her sister's real condition. A charge upon the question of the plaintiff's fraud in procuring a delivery of the policy was requested and refused; and it is argued in support of this refusal that there was a delivery of the policy before it was actually placed in the hands of the plaintiff, so that her statement regarding the health of the insured at that time was immaterial.

The court's refusal seems to have been based on the decision in *Porter* v. *Mutual Life Ins. Co.,* 70 Vt. 504, 41 Atl. 970. In that case the policy had been sent to the agent for unconditional delivery to the insured, and was withheld by the agent to secure the payment of a note which he had taken for the first premium. There is nothing in this case that requires the conclusion, or even indicates, that the policy was sent to the agent for unconditional delivery; and it is not to be presumed that in taking the precaution he did to safeguard the interests of his company, in the special circumstances attending the delivery, he was acting at variance with its instructions.

*Judgment reversed and cause remanded.*

Upon the reading of the foregoing opinion plaintiff's counsel asked that entry of judgment be withheld with a view to the filing of a motion for a rehearing, and the case was thereupon entered with the court. And now in vacation the plaintiff files her motion for a rehearing, with a statement of her claims, supported by a citation of authorities; and the question is whether a rehearing shall be granted.

The defendant requested an instruction that if the plaintiff induced the defendant's agent to deliver the policy to her by a false representation as to the health of the insured, the policy never took effect and the plaintiff could not recover. The defendant excepted to the refusal to charge as stated in this request, and to the charge as given upon the subject of the request.

The plaintiff claims that no question was saved by this exception, because the latter part of it is unsound. This is an erroneous application of the rule regarding requests. The test of the sufficiency of an exception is whether it fairly directed the attention of the court to the claimed error. If the second clause

of this exception is too general to be entitled to consideration, this will not prevent a consideration of the question raised by the first clause.

It is claimed that the request was defective because it submitted no question as to the plaintiff's knowledge of the falsity of the representation and her intent in making it. We think the request was a correct statement of the law applicable to the case presented by the evidence. The plaintiff sues as the sole beneficiary of the policy. She obtained it from the company's agent by her statement regarding the insured's health, and obtained it for the purpose of delivering it to the insured. The undisputed evidence shows that she acted for the insured in procuring the making of an application on which the company would issue a policy, and in fixing the terms of the clause affecting the beneficiary. It is not questioned but that Mrs. Fitzgerald's present relations to the claim are such that if she were found to have made the statement with knowledge of its falsity she would be chargeable with fraud. We think the facts bring her within the just application of the rule under which representations made as of a party's own knowledge, which prove to be false in fact, are inferred to be wilfully false, if unexplained. The question asked of her called for her knowledge as to the insured's health, and in answering as she did she assumed to have knowledge of the thing stated. She was in court as the party plaintiff, heard all the evidence, and offered no explanation.

Counsel are mistaken in saying that the court assumed the existence of certain facts, and assumed from these facts that Mrs. Fitzgerald had knowledge of the insured's condition. The statements referred to are either contingent in terms, or so framed as to show the indefiniteness of the testimony; and the only conclusion reached is that there was evidence from which the jury might have found that Mrs. Fitzgerald had knowledge of her sister's condition when she made the statement. Certainly nothing regarding her knowledge could be inferred from the verdict, for the jury was not given an opportunity to pass upon the question.

The exception to the charge as given upon this subject is properly available. The court laid aside the request, and refused to submit the question to the jury on the ground that the transmission of the policy to the agent was in law a delivery to the insured. This single proposition is all that is contained in the

instruction given, and the exception taken directed the attention of the court to the defendant's claim regarding it as plainly as if it had contained an exact recital of the terms of the instruction.

The remaining points mostly relate to the effect of what was done by the company before the policy was delivered to the plaintiff. It is claimed that the request is defective in that it makes the taking effect of the policy depend upon its being delivered, and inferentially claimed that the charge as given on the subject was correct.

In the absence of a mutual intention to the contrary, a contract which is to be evidenced by a writing is not consummated until the writing is delivered. The holding that an insurance contract is complete and binding when the parties have come to an agreement as to all its terms and nothing remains but to execute and deliver the policy, rests on the existence of this mutual intention. But there is no mutual binding intention in this respect if the action of one of the parties is induced by fraud. When there is a claim of fraud in the application as well as in the procurement of the policy, it cannot be said that the transmission of the policy to the agent is the same as a delivery to the insured, without considering whether there was that mutuality of agreement and intention which excuses the actual delivery.

The jury has negatived the existence of fraud in connection with the application, under an erroneous instruction not excepted to. But this finding is not a conclusive determination of the issue in its relation to the further question regarding which there is an exception. In considering the case with reference to the claim of fraud in procuring the policy, we are concerned merely with what the evidence tended to show. The question whether the procurement of the policy was a matter concerning which fraud could be predicated, involved an inquiry as to whether the delivery of the policy had been rendered immaterial by the action previously taken; and the question whether the defendant was entitled to go to the jury on the claim of fraud in this respect depended upon whether there was evidence tending to show that there was no valid completed contract which was intended to take effect regardless of the delivery of the policy, as well as evidence tending to show that the delivery of the policy was procured by fraud. So the exception to the instruction by which

this question was withdrawn from the jury had reference to, and is supported by, the evidence on both branches of the inquiry.

Counsel refer in support of the motion to the indorsement on the first application, the date and terms of the policy, the relation of its provisions to the dates contained in it, the acknowledgement therein of the receipt of the first premium, and the actual issuance of the policy,—as determining the time when the policy took effect. But these things did not conclude a contract if they were induced by the fraudulent representations which the evidence tended to establish. The argument would have been pertinent if there had been no claim of fraud, and the loss had occurred before the delivery of the policy, and the company had refused payment on the ground of non-delivery.

Counsel assume that there was no evidence to overcome the presumption arising from the possession of the policy, and nothing to show that it was not in the agent's hands for unconditional delivery. The fact that when Mrs. Fitzgerald proposed that the policy be left with her to be delivered to the insured Schiemenz made the inquiry he did regarding the insured's health, and his testimony that he would not have given her the policy if she had not told him what she did, were evidence tending to show that the delivery of the policy was procured by her statement. We think this action of the agent, which was directly connected with the performance of his regular duties, and was in its nature beneficial to his principal, and was taken in circumstances which justified precaution, cannot be held to have been unauthorized, even on the assumption that the policy came to him without special instructions.

The court submitted to the jury the question of fraud in procuring the issuance of the policy, erring only in stating the rule by which fraud was to be determined; but nevertheless gave the jury a binding instruction that the transmission of the policy to the agent was a delivery to the insured; thereby eliminating from the issues of fact the question of fraud as related to the delivery of the policy. The instruction taking this question from the jury was error, and was excepted to.

It is suggested in regard to our treatment of the *Porter* case that the opinion erroneously assumes that there was evidence tending to show that the policy was sent to the agent for unconditional delivery, and that this has led to a mistaken view of the decision. We find nothing in the statement of the reporter or

in the facts stated in the opinion that indicates such an error. The case was adjudged on an agreed statement, and there was no claim of fraud in procuring the issuance of the policy.

Mention is made of the fact that we failed to notice the plaintiff's motion for the direction of a verdict. Such a motion was made on the ground that there had been no return of the premiums or other rescission, and was overruled, and an exception taken. The court directed the deduction of one premium. It is suggested that the retention of the premiums leaves the insurance contract in force. The plaintiff has filed no exceptions, and is not entitled to be heard on this question.

The argument submitted is entitled to, and has received, careful consideration, but we are satisfied that a rehearing is unnecessary.

*Motion overruled and stay of entry vacated.*